Edwin L. ALEXANDER,
et al., Plaintiffs,

v.

The UNITED STATES, Defendant.

No. 90–209C.

United States Court of Federal Claims.

April 30, 1993.

Gregory K. McGillivary, Washington, DC, for plaintiffs. Neil I. Ditchek, of counsel.

Anthony J. Ciccone, U.S. Dept. of Justice, Civil Div., Washington, DC, with whom were David M. Cohen, Director, and Stuart M. Gerson, Asst. Atty. Gen., for defendant. Michael J. Coster and Peter D. Gregory, U.S. I.N.S., Washington, DC, of counsel.

## OPINION

SMITH, Chief Judge.

This matter is before the court on defendant's Motion to Dismiss and plaintiffs' Cross Motion for Partial Summary Judgment.[1] Plaintiffs, nineteen (19) present and former border patrol agents, brought this action pursuant to 8 U.S.C. § 1353a (1931) (1931 Act) and the Fair Labor Standards Act (FLSA) (codified as amended at 29 U.S.C. §§ 201–219 (1988)), or, alternatively, under the Federal Employees Pay Act of 1945 (FEPA), 5 U.S.C. §§ 5541–5550a (1945), seeking additional overtime compensation for work performed by them as employees of the Immigration and Naturalization Service (INS). In its motion, defendant argues that plaintiffs lack any colorable entitlement to additional overtime pay since they have typically received more than the one and one-half overtime minimum guaranteed them under the FLSA. In their motion, plaintiffs counter that the government manipulated the applicable statutory pay schemes to ensure that plaintiffs were deprived of pay under either the

---

1. Because matters outside the pleadings have been presented to and not excluded by the court, defendant's motion to dismiss shall, pursuant to RCFC 12(b)(4), be treated as one for summary judgment.

1931 Act or the FLSA. Based on the briefs submitted, the exhibits, the caselaw and after hearing oral argument, the court grants defendant's motion for summary judgment and denies plaintiffs' cross motion for partial summary judgment.[2]

## FACTS

Plaintiffs are present or former border patrol agents who also, on occasion, served as acting immigration inspectors.[3] As inspectors, plaintiffs' duties included the primary inspection of vessels and their crews. Each inspection took approximately three to five hours. An inspectional overtime shift generally began with a call to plaintiffs at their homes or at their border patrol stations from the ship's agent informing them of the time the ship was scheduled to pull into port. Because of the nature of the shipping business, a substantial portion of each plaintiff's inspection duties were performed between the hours of 5:00 p.m. and 8:00 a.m., Monday through Friday, and on Sundays and holidays. Plaintiffs often performed inspection duties on the same days as they performed their duties as border patrol agents. Because INS forbade them to perform regular border patrol duties during their inspection overtime shifts, they could not report for their border patrol shifts until after the completion of their inspection overtime shifts. Accordingly, plaintiffs were often required to reschedule their border patrol shifts, resulting in unusually long working days.

During the time period that plaintiffs worked as acting immigration inspectors,

2. In the alternative, defendant argues that the amended complaint is jurisdictionally defective to the extent it fails to limit plaintiffs' backpay claims to the FLSA's two year statute of limitations. Because the court finds that plaintiffs' arguments fail on the merits, it does not address defendant's additional arguments on partial dismissal.

3. The parties dispute whether plaintiffs were, in effect, given the title of "acting immigration inspector."

4. Specifically, the 1931 Act states that: [t]he Attorney General shall fix a reasonable rate of extra compensation for overtime services of immigration officers and [INS] em-

they were employed at the border patrol station in either Lake Charles, Baton Rouge or New Orleans, Louisiana, or, Galveston or Corpus Christi, Texas. During the relevant time period, there were few, if any, full-time immigration inspectors stationed in the Lake Charles, Baton Rouge, New Orleans, Galveston or Corpus Christi areas. Thus, much of the inspectional work required in these areas was assumed by plaintiffs.

## DISCUSSION

### I. STATUTORY BACKGROUND

Because this case involves the interplay of three different overtime pay schemes, the court will provide a brief description of each.

#### A. *1931 Act*

The 1931 Act, codified at 8 U.S.C. §§ 1353a, 1353b, provides extra pay for INS employees who perform immigration inspection duties between 5:00 p.m. and 8:00 a.m. (evening hours), or upon Sundays or holidays.[4] The administration of the 1931 Act by the INS is set forth in § 2978 of the INS Administrative Manual (AM). Under that section, the INS pays for evening hour overtime immigration inspections as follows:

(a) One-half day's pay for the initial time on duty of less than three (3) hours; *Provided,* that the time on duty is at least one (1) hour;

ployees ... who may be required to remain on duty between ... five [p.m.] and eight [a.m.], or on Sundays or holidays, to perform duties in connection with the examination and landing of passengers and crews of steamships, trains, airplanes, or other vehicles arriving ... from a foreign port ..., such rates to be fixed on a basis of one-half day's additional pay for each two hours or fraction thereof of at least one hour that the overtime extends beyond five [p.m.] (but not to exceed two and one-half days' pay for the full period from five [p.m.] to eight [a.m.]) and two additional days' pay for Sunday and holiday duty. 8 U.S.C. § 1353(a).

(b) One (1) day's pay for time on duty of three (3) hours or more, but less than five (5) hours during the period;

(c) One and one-half days' pay for time on duty of five (5) hours or more, but less than seven (7) hours during the period;

(d) Two (2) days' pay for time on duty of seven (7) hours or more, but less than nine (9) hours during the period; or

(e) Two and one-half days' pay for time on duty of nine (9) hours or more during the period.

AM 2978.09(9)(d)(3).

Additionally, the INS pays for overtime immigration inspections on Sundays and holidays at a rate of two days' pay for each such day worked, with a day consisting of at least one and not more than eight hours.

*Computation of Pay for Sunday and Holiday Duty.* . . . An immigration officer shall be entitled to two (2) days' pay, in addition to any pay for the basic workweek, for time on duty of eight (8) hours or less on a Sunday or on a holiday.

AM 2978.11(9)(e).[5]

B. *FLSA*

Under the FLSA and 5 C.F.R. Part 551[6], nonexempt federal employees are guaranteed a basic overtime entitlement of one and one-half times their regular rate.[7]

Except as otherwise provided in this section, no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a)(1). The term "regular rate", as defined by the FLSA, includes all remuneration received by the employee for his employment except certain overtime pay.

[T]he "regular rate" at which an employee is employed shall be deemed to include all remuneration for employment paid to . . . the employee, but shall not be deemed to include—

. . . .

(5) extra compensation provided by a premium rate paid for certain hours worked by the employee in any day or workweek because such hours are . . . in excess of eight in a day or in excess of the maximum workweek applicable to such employee under subsection (a) of this section or in excess of the employee's . . . regular working hours, as the case may be;

(6) extra compensation provided by a premium rate paid for work by the employee on Saturdays, Sundays, holidays, or regular days of rest, or on the sixth or seventh day of the workweek, where such premium rate is not less than one and one-half times the rate established in good faith for like work performed in nonovertime hours on other days; or

(7) extra compensation provided by a premium rate paid to the employee, in pursuance of an applicable employment contract or collective bargaining agreement, for work outside of the hours established in good faith by the contract or agreement as the basic, normal, or regular workday (not exceeding eight hours) or workweek (not exceeding the maximum workweek applicable to such employee under subsection (a) of this section), where such premium rate is not less than one and one-half times the rate established in good faith by the contract or agreement for like work performed during such workday or workweek.

29 U.S.C. § 207(e)(5)–(7). Simply stated, "extra compensation" at a "premium rate" for work performed in excess of the typical

---

5. As defined in AM 2978.02(4)(f), the term "immigration officer" includes immigration inspectors and border patrol agents.

6. The Office of Personnel Management (OPM) has promulgated regulations implementing the FLSA at 5 C.F.R. Part 551.

7. Exempt employees are generally those engaged in "executive," "administrative," "professional" or "foreign" duties. *See* 5 C.F.R. 551, Subpart B, §§ 551.201–.208. Defendant does not argue that plaintiffs are exempt from the FLSA.

workweek, or on Sundays or holidays, within the meaning of § 207(e)(5)–(7), is not used in the "regular rate" computation for purposes of determining FLSA overtime entitlements.

The FLSA further provides in section 7(h) that the premium pay excluded from the "regular rate" under paragraphs 7(e)(5)–(7) may be credited toward any overtime compensation due under the FLSA.

> Extra compensation paid as described in paragraphs (5), (6), and (7) of subsection (e) shall be creditable toward overtime compensation payable pursuant to this section.

29 U.S.C. § 207(h).

### C. *FEPA*

5 U.S.C. § 5542 sets forth the general statutory scheme for overtime pay under FEPA. It provides that work exceeding the basic 40 hour workweek shall be compensated at an hourly rate of one and one-half times the hourly rate of basic pay, subject to the following limitations:

> [H]ours of work officially ordered or approved in excess of 40 hours in an administrative workweek, or ... in excess of 8 hours in a day, performed by an employee are overtime work and shall be paid for, except as otherwise provided ..., at the following rates:
>
> (1) For an employee whose basic pay is at a rate which does not exceed the minimum rate of basic pay for GS–10, the overtime hourly rate of pay is an amount equal to one and one-half times the hourly rate of basic pay of the employee, and all that amount is premium pay.
>
> (2) For an employee whose basic pay is at a rate which exceeds the minimum rate of basic pay for GS–10, the overtime hourly rate of pay is an amount equal to one and one-half times the hourly rate of

> the minimum rate of basic pay for GS–10, and all that amount is premium pay....

5 U.S.C. § 5542(a).

Title 5 also places an upper cap upon the amount of premium pay a Federal employee can receive under FEPA for overtime work. "An employee may be paid premium pay ... only to the extent that the payment does not cause his aggregate rate of pay for any pay period to exceed the maximum rate for GS–15." 5 U.S.C. § 5547(a).[8] Moreover, while OPM regulations expressly contemplate affording covered workers the maximum overtime compensation to which they are entitled to by law,[9] FEPA's anti-pyramiding provision precludes Federal employees from obtaining overtime premium pay under FEPA for which compensation has already been provided pursuant to 8 U.S.C. § 1353a.

> This subchapter does not prevent payment for overtime services or for Sunday or holiday work under ... (2) sections 1353a and 1353b of title 8.
>
> . . . .
>
> However, an employee may not receive premium pay under this subchapter for the same services for which he is paid under one of these statutes.

5 U.S.C. § 5549.

### II. STANDARD OF REVIEW

Summary judgment shall be rendered if the pleadings and other matters submitted "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." RCFC 56(c). The mere existence of some alleged factual dispute will not defeat an otherwise properly supported motion for summary judgment. A disputed fact is material only if its resolution might affect

---

**8.** This cap is inapplicable to the overtime compensation that a Federal employee can receive under the FLSA. "Overtime paid General Schedule employees under the ... FLSA is not subject to the limitation otherwise imposed under 5 U.S.C. § 5547." INS AM § 2977, Exhibit 3, page 36, DOJ Order 1551.5, ¶ 24(a).

**9.** An employee entitled to overtime pay under this subpart and overtime pay under § 550.-

113 of this chapter, or under any other authority, shall be paid under whichever authority produces the greater overtime entitlement in the workweek. This overtime pay shall be in addition to all pay, other than overtime pay, to which the employee is entitled under title 5, United States Code, or any other authority.

5 C.F.R. § 551.513.

the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). Where cross motions for summary judgment are presented, the court is not required to grant judgment as a matter of law for either party. Each party's motion must be separately evaluated on its own merits. All reasonable inferences must be drawn against the party whose motion is under consideration. In this case defendant has deemed admitted, for purposes of its motion, the well pled allegations of fact in plaintiffs' amended complaint. Additionally, disposition of this case as a matter of law is particularly appropriate because both parties agree that the issues before the court are essentially legal questions of statutory interpretation.

## III. NATURE OF THE CASE

### A. *Computation of the "Regular Rate"*

Plaintiffs first complain that the INS incorrectly computed their FLSA entitlement during pay periods in which they performed inspectional duties. Plaintiffs, as nonexempt federal employees during the years in question, were entitled to a guaranteed basic overtime pay of one and one-half times their regular rate under the FLSA. 29 U.S.C. § 207(a)(1). An employee's regular rate is computed by dividing the total remuneration paid to such employee in the workweek by the total number of hours worked in the workweek for which such compensation was paid. 5 C.F.R. § 551.511(a).

Plaintiffs contend that the INS incorrectly computed their regular rate by dividing the total remuneration earned as border patrol agents by the number of hours

worked as both border patrol agents and immigration inspectors. Defendant counters that §§ 7(e) and 7(h) of the FLSA contemplate the exclusion of 1931 Act premium pay from plaintiffs' regular rate in calculating FLSA overtime benefits. Under 29 U.S.C. § 207(e), total remuneration for employment shall not be deemed to include:

(1) premium pay for certain hours worked in excess of eight in a day, or in excess of the regular workweek applicable to an employee, § 207(e)(5);

(2) premium pay for hours of work on a Sunday or holiday where such premium rate is not less than time and one-half, § 207(e)(6); and

(3) premium pay for work outside the normal or regular workday or workweek where such premium rate is not less than time and one-half, § 207(e)(7).

Moreover, 29 U.S.C. § 207(h) provides that premium pay, as described in § 207(e)(5), (6), or (7), may be credited toward any overtime compensation payable under the FLSA. Plaintiffs do not dispute that the regular rate calculation includes all remuneration except the statutory exceptions. They simply argue that 1931 Act pay does not fall within the § 207(e) exceptions, and, therefore, it should be included in the computation of plaintiffs' regular rate of pay. Further, because only compensation that qualifies as premium pay under §§ 207(e)(5), (6), or (7) may be credited towards FLSA entitlement, plaintiffs conclude that defendant cannot credit the 1931 Act payments under § 207(h) to avoid FLSA overtime pay.

In support of their argument, plaintiffs cite 29 C.F.R. § 778.308(a),[10] which states

---

10. 29 C.F.R. Part 778 is the Department of Labor (DOL) FLSA regulations applicable to the private sector. The parties dispute whether these regulations are controlling in this case. Plaintiffs maintain that although OPM "administers the FLSA in the federal sector, ... it is obligated 'to exercise its administrative authority in a manner that is consistent with the Secretary of Labor's implementation of the FLSA. When the civil service and FLSA systems conflict, OPM must defer to the FLSA so that any employee entitled to overtime compensation un-

der the FLSA receives it under the civil service rules.'" Plaintiffs' Cross Motion for Partial Summary Judgment and Memorandum in Opposition to Defendant's Motion to Dismiss (Cross Motion) at pp. 30–31 (quoting *American Federation of Government Employees v. OPM*, 821 F.2d 761 (D.C.Cir.1987)). While admitting that "OPM was also instructed by the Congress to administer the [FLSA] in a manner consistent with the Department of Labor's administration of FLSA in the private sector", *Lanehart v. Horner*, 818 F.2d 1574, 1578 (Fed.Cir.1987), defendant counters that Congress expressly vested in

that "[t]o qualify as an overtime premium under section 7(e)(5), (6), or (7), the extra compensation for overtime hours must be paid pursuant to a premium rate which is likewise *a rate per hour....*" (emphasis added). Additionally, 29 C.F.R. § 778.310 provides that:

> A premium in the form of a lump sum which is paid for work performed during overtime hours *without regard to the number of overtime hours worked* does not qualify as an overtime premium even though the amount of money may be equal to or greater than the sum owed on a per hour basis. (emphasis added).

In this case, when an employee performs work as an immigration inspector on a Sunday or a holiday, the INS pays him, pursuant to the 1931 Act, two days' pay for each day worked, with a "day" consisting of at least one hour and not more than eight hours. *See* AM 2978.11(9)(e). Therefore, an immigration inspector could receive 16 hours worth of compensation for as little as one hour of actual work.[11] Similarly, compensation for inspectional work performed during the evening hours is not set at a strict hourly rate.[12] As plaintiffs correctly point out, in the most extreme case the INS pays immigration officers a flat

rate of two and one-half days' pay regardless of whether they perform 9 or 15 hours of inspectional work between 5 p.m. and 8 a.m. Plaintiffs contend that because 1931 Act premium pay is not paid as a strict rate per hour and is not dependent on the hours worked, it is a lump sum payment, within the meaning of 29 C.F.R. § 778.308(a) and 29 C.F.R. § 778.310, that must be included in the calculation of the plaintiffs' regular rates of pay.

The court acknowledges that "[s]imply because the remuneration is labeled 'premium pay' ... does not mean that it is excluded as premium pay under the FLSA. Section 7(e) does not provide a blanket exclusion of premium pay; rather, only premium pay received for certain activities." *Zumerling v. Devine,* 769 F.2d 745, 751 (Fed. Cir.1985). The court also recognizes that 1931 Act premium compensation is not paid as a *strict* rate per hour. However, it is also not a lump sum "paid for work performed during overtime hours *without regard* to the number of overtime hours worked." 29 C.F.R. 778.310 (emphasis added).

In fact, 1931 Act pay for evening duty is clearly calibrated to the number of hours worked. An INS employee must work one

---

OPM, the FLSA's administration in the Federal workplace. *Zumerling v. Devine,* 769 F.2d 745, 750 (Fed.Cir.1985) ("OPM has been given the power to interpret the statute and to set forth the guidelines and policies of the agency."); *Abreu v. United States,* 22 Cl.Ct. 230, 234 (1991), *aff'd,* 948 F.2d 1229 (Fed.Cir.1991) ("Congress gave the Civil Service Commission (now [OPM]) authority to administer the FLSA with respect to federal employees."). Because the court finds that the government's administration of the FLSA in this case is consistent with the DOL regulations, the court need not resolve the parties' dispute as to whether such regulations are controlling in this matter.

11. At oral argument, defendant informed the court that this situation never actually occurs. In 1959, the INS issued regulation ¶ 2818.04.2a requiring an immigration officer who works on Sundays or holidays to complete a full eight-hour shift. After the officer performs inspection duties "to the maximum extent possible," the regulation directs that he is to be assigned other duties. AM ¶ 2818.04.2a. In affirmation of the INS regulation, the Ninth Circuit held "that the INS regulation requiring immigration officials to perform non-inspection duties to

complete an eight-hour shift on Sundays and holidays does not conflict with section 1353a." *American Federation of Government Employees v. Ilchert,* 619 F.2d 796, 797 (9th Cir.1980). Accordingly, 1931 Act overtime pay for work on Sundays and holidays has essentially been converted into double-time.

12. According to the INS AM for inspectional overtime performed between 5 p.m. and 8 a.m., the INS must provide its employees with:

    (a) One-half day's pay for the initial time on duty of less than three (3) hours: *Provided,* that time on duty is at least one (1) hour;

    (b) One (1) day's pay for time on duty of three (3) hours or more, but less than five (5) hours during the period;

    (c) One and one-half days' pay for time on duty of five (5) hours or more, but less than seven (7) hours during the period;

    (d) Two (2) days' pay for time on duty of seven (7) hours or more, but less than nine (9) hours during the period; or

    (e) Two and one-half days' pay for time on duty of nine (9) hours or more during the period.

AM 2978.09(9)(d)(3).

to three hours to be paid four hours worth of compensation, three to five hours for eight hours of pay, up to fifteen hours of work to receive two and one-half days' pay. With regard to 1931 Act compensation for Sundays and holidays, the INS, by issuing regulation ¶ 2818.04.2a requiring an immigration officer who works on Sundays or holidays to complete a full eight-hour shift,[13] has effectively converted such premium overtime pay into double-time, thereby also tying it to the number of hours worked.

■ Moreover, the United States Court of Appeals for the Federal Circuit has stated that "a *true* overtime premium [is] to be excluded from the 'regular rate', and that 'extra compensation provided by ... [a premium rate for hours worked in excess of a specified daily or weekly standard] will be regarded as a true overtime premium....' " (emphasis added) (brackets in original). *Slugocki v. United States*, 816 F.2d 1572, 1578 (Fed.Cir.1987), *cert. denied*, 484 U.S. 976, 108 S.Ct. 486, 98 L.Ed.2d 484 (1987) (interpreting 29 C.F.R. §§ 778.202(b) and (d)). In full, 29 C.F.R. § 778.202(d) states that:

> [w]here payment at premium rates for hours worked in excess of a specified daily or weekly standard is made pursuant to the requirements of another applicable statute, the extra compensation provided by such premium rates will be regarded as a true overtime premium.

In this case, plaintiffs who perform overtime immigration inspection duty during the evening hours earn premium pay at generous rates under the 1931 Act, typically between time-and-a-half and double-time. Clearly, these rates are for hours worked in excess of a specified daily standard pursuant to the 1931 Act. The 1931 Act, in pertinent part, states that "[t]he Attorney General shall fix a reasonable rate of extra compensation for overtime services of immigration officers ... who may be required *to remain on duty* between ... five [p.m.] and 8 [a.m.]...." 8 U.S.C. § 1353a (emphasis added). *See also United States v. Myers*, 320 U.S. 561, 64 S.Ct. 337, 88 L.Ed.

312 (1944), *modified*, 321 U.S. 750 (1944), where the Supreme Court noted that "overtime, as applied to week days, refers to hours longer than the daily limit of 8 A.M. to 5 P.M....." *Myers*, 320 U.S. at 573, 64 S.Ct. at 344. Accordingly, 1931 Act payments for plaintiffs' work performed during the evening hours shall be treated as a true overtime premium.

With regard to 1931 Act premium pay for Sunday and holiday duty, 29 C.F.R. 778.202(e) provides:

> Under section 7(e)(6) and 7(h), extra premium compensation paid pursuant to contract or statute for work on the sixth or seventh day worked in the workweek is regarded in the same light as premiums paid for work in excess of the applicable maximum hours standard or the employee's normal or regular workweek.

Because the 1931 Act provides for extra premium compensation for work on Sundays, typically the seventh day of the workweek, such premium pay is treated the same as compensation for work in excess of plaintiffs' normal workweek, in this case their work during the evening hours. Accordingly, plaintiffs' 1931 Act premium pay for Sunday work shall also be treated as true overtime for purposes of 29 U.S.C. §§ 7(e)(6) and 7(h).

Plaintiffs also claim that 29 C.F.R. § 778.207(b) is directly applicable to the Sunday or holiday issue. That section states:

> where an employer pays for 8 hours at premium rates for a job performed during the overtime hours whether it is completed in 8 hours or less, no part of the premium paid qualifies as overtime premium under sections 7(e)(5), (6), or (7).

29 C.F.R. § 778.207(b). Because plaintiffs were entitled to two days pay regardless of the number of hours of inspectional work they performed on a particular Sunday or holiday, they argue that no part of such compensation qualifies as overtime premium. However, plaintiffs have taken § 778.207(b) out of context. That section lists as nonovertime premiums that must

---

**13.** *See* footnote 11, *supra*.

be included in an employee's regular rate, night-shift differentials, premiums paid for hazardous, arduous or dirty work, and any extra compensation which is paid as an incentive for the rapid performance of work. In the context of an incentive for the rapid performance of work, § 778.-207(b) gives the example upon which plaintiffs' argument is based: where an employer pays for 8 hours at premium rates regardless of whether the job is completed in less time, the entire premium paid qualifies as overtime premium under § 7(e)(5), (6), or (7). This provision is inconsistent with plaintiffs' theory. As it is taken out of context, plaintiffs' argument based on § 778.207(b) has no merit.

Finally, plaintiffs analogize the 1931 Act premium compensation with premium pay on an annual basis for administratively uncontrollable overtime (AUO), paid pursuant to 5 U.S.C. § 5545(c)(2), and premium pay on an annual basis for regularly scheduled "standby" duty, paid pursuant to 5 U.S.C. § 5545(c)(1). Premium pay for AUO work and standby duty "do *not* qualify as statutory exclusions from the 'regular rate' and therefore, they are included in computing an employee's total remuneration." FPM Letter 551–5, Attachment 2, ¶ D(1). This position taken by the Civil Service Commission, OPM's predecessor, was upheld in *Alexander v. United States*, 1 Cl.Ct. 653 (1983) (AUO premium pay does not qualify for the section 7(e)(5) exclusion); *Slugocki v. United States*, 816 F.2d 1572 (Fed.Cir. 1987) (AUO pay does not qualify as an exclusion from the computation of regular rate); and *Zumerling v. Devine*, 769 F.2d 745 (Fed.Cir.1985) (premium pay on an annual basis for regularly scheduled standby duty does not fall under the specific statutory exclusions of § 7(e)).

5 U.S.C. § 5545(c)(2) provides as follows: The head of an agency, with the approval of [OPM], may provide that ... an employee in a position in which the hours of duty cannot be controlled administratively, and which requires substantial

amounts of irregular, unscheduled, overtime duty with the employee generally being responsible for recognizing, without supervision, circumstances which require him to remain on duty, shall receive premium pay for this duty on an annual basis instead of premium pay provided by other provisions of this subchapter....

Such premium pay is based upon a projection, made at various points throughout the year, of how much AUO an employee will work. It is an individualized calculation based upon how much AUO was worked during previous periods. Once that projection is made, the employee is placed in either a 10, 15, 20 or 25 percent category. If an employee is in the 25 percent category, for example, he then receives for the entire projected period an additional 25 percent of his base salary. Whether he works 0 AUO hours or 20 AUO hours during any given pay period during the projected period, he receives that additional 25 percent of his base salary.

In *Alexander*, cited with approval by the Federal Circuit in *Zumerling*, Senior Judge White stated that "AUO premium pay does not qualify for the section 7(e)(5) exclusion because it is not a '*premium rate* paid for *certain hours*,'" but rather, is "a fixed sum paid without regard to the actual number of overtime hours worked in a week." (emphasis in the original). 1 Cl.Ct. at 656, 657 (citing 29 C.F.R. § 778.310). Likewise, in *Slugocki* the Federal Circuit held that "AUO pay is neither a 'fixed amount per hour' nor a 'multiple of the non-overtime rate'. Thus, it is not paid at an hourly 'rate.'" 816 F.2d at 1578. As discussed above, however, 1931 Act compensation for evening hours worked and Sunday or holiday duty differs from AUO pay in that it *is* tied to the number of hours worked.

Moreover, AUO, unlike 1931 Act pay, is a flat percentage of an employee's annual basic pay.[14] That percentage and, therefore, the amount received, remains fixed

---

**14.** AUO pay is also treated much like basic pay. Not only is it paid in a lump sum, but it is also computed with basic pay for the purposes of determining civil service retirement benefits for law enforcement employees, and the amount of their group life insurance coverage. *Alexander* 1 Cl.Ct. at 657.

irrespective of the number of hours worked in a particular pay period. Under the example used above, an employee in the 25 percent category will receive an additional 25 percent of his base pay for any given pay period even if he never works a single hour of AUO during that pay period. Conversely, under the 1931 Act and AM ¶ 2818.04.2a, plaintiffs are required to work 8 hours on a Sunday or holiday to receive double-time. As to evening hours, plaintiffs are entitled to receive 1931 Act pay in increments of half days depending on the number of hours of inspectional duty worked.

Similar to AUO compensation, premium pay for standby duty [15] is determined as an appropriate percentage. Therefore, it is not received in return for any particular hours of work. Rather, it embodies the government's recognition that certain of its employees do not work the typical work schedule found within the federal system. As an annual payment, it is not overtime remuneration, but a means of generally compensating employees, such as firemen, given the confines of the federal pay schedule. "As such, it is *part of the wage typically paid for each hour of work* and must be included." (emphasis added). *Zumerling*, 769 F.2d at 751. Clearly, 1931 Act pay is not a similar type of supplement to an employees basic pay. Rather, it is for INS employees who either work longer than their regular day by working into the evening, or who work an additional day of the week, either a Sunday or a holiday. As such, it is unquestionably distinguishable from premium pay for standby duty. Therefore, plaintiffs' analogy must fail.

In their arguments, plaintiffs have lost sight of the fact that the purpose of excluding the premium rate is so that the regular rate will reflect the general hourly wage. *Zumerling*, 769 F.2d at 751. As recognized supplements to employees' general hourly wage, both AUO and standby compensation are included in the computation of their regular rate under the FLSA. As demonstrated above, 1931 Act compensation is not paid without any regard to hours worked. Neither is it computed as a flat percentage of an employee's annual basic pay. It is simply an entitlement to premium pay, typically between time-and-a-half and double-time, for hours worked in excess of plaintiffs' regular workday or workweek. As such, the INS has properly excluded from its calculation of plaintiffs' regular rate, for purposes of the FLSA, their 1931 Act compensation for evening hours worked and for Sunday and holiday duty.

### B. *Calculation of Overtime Benefits*

In the alternative, plaintiffs argue that they are entitled to the benefits of the 1931 Act for the hours they worked as immigration inspectors and to a separate amount for the FLSA overtime pay computed solely for their hours worked performing border patrol agent duties. In otherwords, plaintiffs believe that the INS should make one calculation for premium pay under the 1931 Act and another for FLSA overtime pay for duties performed as border patrol agents. In support of this position, they note that the positions of border patrol agent and immigration inspector are two separate positions for which overtime pay entitlement is governed under two different statutory pay schemes.[16] Plaintiffs complain that instead of separate calculations, the INS has adopted a method of calculating each plain-

---

**15.** 5 U.S.C. § 5545(c)(1) provides in pertinent part as follows:

[A]n employee in a position requiring him regularly to remain at ... his station during longer than ordinary periods of duty, a substantial part of which consists of remaining in a standby status rather than performing work, shall receive premium pay for this duty on an annual basis instead of premium pay provided by other provisions of this subchapter, except for irregular, unscheduled overtime duty in excess of his regularly scheduled weekly tour. Premium pay under this para-

graph is determined as an appropriate percentage, not in excess of 25 percent, of such part of the rate of basic pay for the position as does not exceed the minimum rate of basic pay for GS–10. . . .

**16.** Inspectional overtime duties performed between the hours of 5 p.m. and 8 a.m. and on Sundays and holidays are compensated under the 1931 Act, 8 U.S.C. § 1353a. Border patrol overtime duties are generally compensated under FEPA, 5 U.S.C. § 5542.

tiff's pay that ensures that he is deprived of either FLSA pay or 1931 Act pay in each pay period where such plaintiff worked overtime as a border patrol agent and performed inspectional duties. They contend that defendant's method thwarts the purposes of the 1931 Act and the FLSA.

The purpose of the 1931 Act is twofold: (1) to provide immigration inspectors with "extra pay" for being held over or called in to work odd evening hours or on Sundays and holidays; and (2) to furnish an incentive to steamship companies to arrange their schedule of arrivals so that inspections may be conducted during normal daylight hours as much as possible.[17] S.Rep. No. 1720, 71st Cong., 3rd Sess. 4 (1931); H.R.Rep. No. 1214, 71st Cong., 2nd Sess. 4 (1930). The Congressional goal in enacting the premium overtime pay requirements of the FLSA was (1) to spread employment by placing financial pressure on employers to hire additional workers rather than employ the same number of workers for longer hours; and (2) to fairly compensate employees for the burden of working long hours at the behest of their employer. *See Walling v. Helmerich & Payne, Inc.*, 323 U.S. 37, 40, 65 S.Ct. 11, 13, 89 L.Ed. 29 (1944). Therefore, plaintiffs conclude that these overtime provisions should be interpreted liberally to ensure that they were not obligated to work long hours without additional time-and-a-half overtime compensation.

It is the general practice of the INS to first pay its eligible employees all overtime pay due them under FEPA [18] and the 1931 Act.[19] It then recomputes such employees' overtime pay entitlement under the FLSA. First, it determines all of the eligible overtime hours, those above 85.5 hours per pay period for law enforcement employees like plaintiffs. Second, it calculates the amount due under the FLSA for those overtime hours at a rate of one and one-half times the regular rate of pay. Third, it compares the total FLSA amount with the payment previously made under FEPA/1931 Act. Finally, where the amount due under FEPA/1931 Act is not sufficient to satisfy the requirement that such employees must receive a basic overtime entitlement of one and one-half times their regular rate of pay for overtime duty, a supplemental payment is authorized to be provided. Affidavit of Mark Greenstein, Deputy Director of the Finance Staff, Justice Management Division, United States Department of Justice, ¶ 3 at 2 and ¶ 10 at 6. In essence, the FLSA is a general statute that establishes an overtime pay floor by requiring that nonexempt employees be paid at the rate of one and one-half times their regular rate of pay for every hour of actual overtime work.

To show the specifics of defendant's pay methodology, the court has attached, as an exhibit, a blank copy of a Justice Employee Data Service Worksheet for Computing FLSA Under 7k for Law Enforcement Employees. The worksheet is divided into two sections for comparison purposes: Section A calculates the employee's FEPA/1931 Act overtime benefits. Section B is an

---

17. During the time period relevant to this action, the shipping companies were required to reimburse the INS for premium payments made to employees under the 1931 Act. However, because air travel has now largely displaced steamship travel and because Congress has eliminated additional fees for the airlines, public convenience is served by Sunday arrivals, and so the legislative policy behind § 1353 has been superseded. *American Fed'n of Government Employees v. Ilchert*, 619 F.2d 796, 797 (9th Cir.1980).

18. Under FEPA, Federal employees are entitled to overtime pay for work exceeding a basic 40 hour workweek at a rate of one and one-half times their hourly rate of basic pay. In the case of employees paid above the GS–10 level, the rate is one and one-half times the hourly mini-

mum rate of GS–10 basic pay. Law enforcement officials are paid at the rate of one and one-half times the hourly minimum rate of GS–10 basic pay, or at their hourly rate of pay, whichever is more. 5 U.S.C. § 5542(a)(4). Additionally, AUO is compensated under FEPA solely through annual premium payments of up to 25 percent of basic pay. 5 U.S.C. § 5545(c)(2). Finally, all FEPA overtime is generally subject to the maximum earnings limitation set forth in 5 U.S.C. § 5547.

19. The 1931 Act only compensates employees for immigration inspection between 5 p.m. and 8 a.m., or on Sundays or holidays. Such compensation is typically between one and one-half time and double-time, depending on the number of hours worked. 8 U.S.C. § 1353a.

independent calculation of that employee's FLSA overtime benefits.

Line A of Section A identifies the rates at which an employee earns (a) basic pay, (b) standard FEPA overtime, (c) night differentials, (d) Sunday differentials, (e) cost of living adjustments, and (f) AUO premium pay. Section A(B) shows the number of non-AUO overtime hours worked, under both FEPA and the 1931 Act, during the involved pay period. Section A(C) computes the employee's FEPA overtime by taking the total of line B and subtracting line B(d), the 1931 Act overtime hours credited. That number is then multiplied by the standard FEPA overtime rate to obtain the employee's FEPA overtime. That overtime is then subject to the maximum earnings limitation of 5 U.S.C. § 5547,[20] as shown on Line E of Section A. Line F represents the actual dollar value of non–1931 Act overtime, which is derived by adding the employee's FEPA overtime (Line C) to Line D [21], and then subtracting the maximum earnings limitation (Line E). This amount is then added to the employee's 1931 Act overtime entitlement [22] (Line G) to obtain the total overtime entitlement under Title 5 (Line H). The figure in Section A(H) is then compared to the employee's FLSA overtime calculation, as computed in section B of the worksheet.

Section B(1) records how many hours are in the employee's scheduled basic tour and the number of AUO hours reported, plus certain meal periods.[23] Lines 4 and 5 set forth the employee's overtime hours. This portion of the worksheet, totalled on Line 6, includes all *actual* hours of overtime work under the 1931 Act [24] and all non-AUO overtime hours of border patrol work. After the employee's overall hours are totalled on Line 7 (the actual hours of an

employee's basic tour and the AUO worked, plus the employee's overtime hours set forth on Lines 4 and 5), the number of hours in excess of the 85.5 hour cap is reflected on Line 8.

In Sections B(9)–(10) and B(11)–(14), an employee's "straight rate" and "regular rate," respectively, are calculated. The straight rate is used to factor out certain differentials for which the employee was already paid in connection with figuring the "time" portion of an employee's "time-and-a-half". It is calculated by adding the amount of basic pay (hours of basic scheduled tour multiplied by the basic pay rate) to the amount of pay for AUO (basic pay multiplied by a percentage based on projections of the number of hours of AUO that will be worked, e.g. 25%). That number (Line 9) is then divided by the hours from Section B(1) to arrive at the straight rate. The regular rate is computed to determine the "half-time" amount that is needed to reach the FLSA's time-and-a-half calculation. It is obtained by taking the total remuneration (Line 9 plus premium pay, which includes an amount: (a) for scheduled overtime hours; (b) for night differential hours; (c) for Sunday differential hours; (d) for hazardous duty differential hours; and (e) for cost of living adjustments) and dividing it by all hours actually worked (Line 7).

Section B(15) is computed by multiplying the straight rate by the non-AUO overtime hours worked that pay period. The regular rate is then divided in half and multiplied by all hours over the 85.5 hour cap to obtain Section B(16). By adding Sections B(15) and B(16), Section B(17) produces the total FLSA calculation. This amount is compared against the total found in Section

---

**20.** 5 U.S.C. § 5547 states that "[a]n employee may be paid premium pay under sections 5542, 5545(a)-(c), and 5546(a), (b) of this title only to the extent that the payment does not cause his aggregate rate of pay for any pay period to exceed the maximum rate for GS–15."

**21.** Line D deals with Pay Code N which is not relevant to this case.

**22.** The amount of 1931 Act overtime entitlement is derived by multiplying the rate of basic pay

by the number of 1931 Act overtime hours credited.

**23.** Line 2 relates to the issue of leave, which is not a part of this case.

**24.** Section B(4)(e) only reflects the actual hours of 1931 Act overtime because the FLSA only compensates employees for actual hours of overtime work performed beyond the FLSA's statutory maximum, in this case 85.5 hours per pay period.

A(H), the FEPA/1931 Act calculation. If the FLSA amount is greater, the excess amount is added to the FEPA/1931 Act amount.

Plaintiffs complain that defendant's methodology of calculating their pay ensures that they are deprived of either FLSA pay or 1931 Act pay in each pay period where a plaintiff worked overtime as a border patrol agent *and* performed inspectional duties. They maintain that as long as plaintiffs' 1931 Act pay entitlement for inspectional overtime exceeded the FLSA pay entitlement for their border patrol duty, it was irrelevant whether they worked one hour of border patrol overtime duty or 30 hours. Accordingly, they claim that the INS had no incentive to limit the number of border patrol overtime hours required of plaintiffs.

To prove this point, plaintiffs offer a Worksheet for Computing FLSA Under 7k of plaintiff Charles Kothmann.[25] During this pay period, Mr. Kothmann worked 32 AUO hours performing duties as a border patrol agent. Although they acknowledge

that he received AUO pay for these hours, plaintiffs state that he received no FLSA pay for them because he performed additional inspectional duties.[26] Plaintiffs believe that the $301.92 paid pursuant to the FEPA/1931 Act was used to offset any compensation under the FLSA that Mr. Kothmann would have been entitled to for his 32 hours of border patrol duty.[27] As further illustration, Line 17 of Exhibit D denotes the amount of FLSA pay earned by Mr. Kothmann, $280.86, for this pay period. The majority of that amount, the $181.47 found on Line 16, represents one-half times Mr. Kothmann's regular rate of pay ($5.11) multiplied by the total hours worked in excess of 85.5 hours (35.5). Of those 35.5 hours, 26.5 represent Mr. Kothmann's border patrol AUO hours, and the remaining 9 hours represent the hours considered to be actually worked by plaintiff as an acting immigration inspector. Therefore, Mr. Kothmann received $135.42 (26.5 hours times $5.11) for his border patrol AUO hours, and $45.99 (9 hours times $5.11) for his inspectional hours. For purposes of

**25.** This worksheet is found in Exhibit D of the Appendix to plaintiffs' Cross Motion. Although plaintiffs maintain that Mr. Kothmann's worksheet was obtained from OPM in 1987, defendant states that it does not know the origin of this document. Inasmuch as there are no signatures at the end of the form in the spaces marked "computed by" and "audited by," defendant asserts that it does not know who performed the handwritten computations contained in this worksheet. (Such comparison calculations are generally performed by computer.) Moreover, there are two apparent errors in Section B of the worksheet. The first error appears on Line 9(b), which calls for the figure on Line 9(a) ($1006.40) to be reproduced on Line 9(b) in connection with calculating the straight rate. Had that $1006.40 been used, the straight rate reflected on Line 10 would have been slightly higher at $11.23. The second error is found at Line 12(a), which calls for the number of scheduled, actual overtime hours (from Line 6) to be multiplied by the straight rate, in connection with calculating the regular rate. Had the author properly inserted the nine hour figure from Line 6 on Line 12(a), rather than leaving Line 12(a) blank, and multiplied it by the $11.23 straight rate, the regular rate reflected in Line 14 would have risen from $10.22 to $11.23. However, these errors do not change the ultimate conclusion that Mr. Kothmann was not entitled to any additional overtime compensation under the FLSA. Finally, as

the figures on the worksheet are used by the court for hypothetical purposes only, neither the errors nor questions as to validity of the document have any bearing on the court's analysis.

**26.** Under his FLSA calculation, Mr. Kothmann's 32 hours of AUO work is included in his total tour of duty, thereby increasing his overtime hours in excess of 85.5 hours to 35.5. This figure is then multiplied by half of the regular rate and added to Line 16 (total hours in addition to the basic tour and AUO, multiplied by the straight rate) to derive the total overtime entitlement under the FLSA.

**27.** They also note that if he had only worked 10 hours or no hours of border patrol overtime work during that pay period, Mr. Kothmann would still have only received the $301.92 paid for inspectional duty under the 1931 Act. Plaintiffs are correct only to the extent that the number of AUO hours worked has no bearing on the amount of pay under the FEPA/1931 Act overtime pay scheme. Although premium pay for AUO hours is provided under FEPA, it is reflected in the percentage of an employee's basic pay. It is not subject to a time-and-a-half rate pursuant to 5 U.S.C. § 5542(a). However, the number of AUO hours worked is certainly significant. Obviously, the more AUO hours worked, the greater the total amount of overtime compensation that is due plaintiffs under the FLSA.

their argument, plaintiffs' concede that they are not entitled to this $45.99 for immigration inspections. However, under their separate computation scheme, they would be entitled to the $135.42 for AUO hours under the FLSA, and $301.92 for the hours credited to Mr. Kothmann under the FEPA/1931 Act computation.

Plaintiffs' scheme directly contravenes the governing OPM regulations which provide that a Federal employee is entitled only to the greater of either FLSA overtime pay or some other statutorily authorized overtime compensation, such as that available pursuant to the 1931 Act and FEPA. Specifically, 5 C.F.R. § 551.513 provides that:

> [a]n employee entitled to overtime pay under this subpart [subpart E, of part 551, implementing the FLSA in the Federal sector] and overtime pay under § 550.113 of this chapter [implementing the FEPA], or any other authority, shall be paid under whichever authority provides the greater overtime entitlement in the workweek. This overtime pay shall be paid in addition to all pay, other than overtime pay, to which the employee is entitled under Title 5, United States Code, or any other authority.

Rather than comparing the overall compensation for the pay period due under each of two distinct systems, the FLSA and FEPA/1931 Act, and then providing the greater total, plaintiffs would have defendant apply each system selectively, and then pay them the most compensation available under each system for each individual hour of overtime performed. This pick and choose method directly contradicts 5 C.F.R. § 551.513.

■ Plaintiffs' response to § 551.513 is that the term "other authority" is not all inclusive. As proof, plaintiffs state that federal law enforcement personnel may receive premium pay, pursuant to 5 U.S.C. § 5542, in addition to FLSA overtime pay. However, this argument does not take into account the second sentence of § 551.513, which states that "[t]his overtime pay shall be paid in addition to all pay, other than overtime pay, to which the employee is

entitled under Title 5 ... or any other authority." As plaintiffs concede, the regulation does not apply to premium pay that is not true overtime. As addressed above, AUO premium pay is in the form of a lump sum and is not true overtime compensation. Accordingly, premium pay compensation for AUO hours worked under FEPA may be paid in addition to FLSA overtime pay. However, as also discussed above, overtime compensation under the 1931 Act is not a lump sum payment and is a true overtime payment. As such, it is subject to § 551.513's dual benefits restriction and may not be paid in addition to FLSA overtime compensation.

Plaintiffs' second contention with regard to § 551.513 is that, to the extent that 5 C.F.R. § 551.513 can be construed to permit OPM to offset FLSA overtime pay entitlements with [1931 Act] premium pay, it is invalid. 5 C.F.R. § 551.513 derives from Federal Personnel Manual Letter 551–5 (FPM Letter 551–5) issued by OPM's predecessor, the Civil Service Commission, on January 15, 1975, pursuant to 29 U.S.C. § 204(f) and 5 U.S.C. § 5548. FPM Letter 551–5 has clearly been sustained by the Federal Circuit.

> This court [in *Zumerling*] held that "OPM's administration of the FLSA overtime provisions [was] both reasonable and consistent with the statute, the regulations promulgated by the Secretary of Labor, and the intent of Congress." ... Moreover, ... the Court of Claims held in *Beebe v. United States*, 640 F.2d 1283, 226 Ct.Cl. 308 (1981), that FPM Letter 551–5 was a proper exercise of authority delegated to OPM and that it was proper for an agency to rely on it in implementing the FLSA provisions.

*LaForte v. Horner*, 833 F.2d 977, 983 (Fed. Cir.1987), *cert. denied*, 486 U.S. 1006, 108 S.Ct. 1730, 100 L.Ed.2d 194 (1988) *quoting Slugocki v. United States*, 816 F.2d at 1578.

■ Finally, even if the court had found that the intent of Congress, as to the interplay of the three overtime statutes, is somehow unclear, the Supreme Court has determined that "the question for the court

is whether the agency's answer is based on a permissible construction of the statute." *Chevron U.S.A., Inc. v. Natural Resources Defense Council,* 467 U.S. 837, 843, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984).[28] Moreover, it is well settled that "considerable weight" is accorded to "an executive department's construction of a statutory scheme it is entrusted to administer." *Chevron,* 467 U.S. at 844, 104 S.Ct. at 2782. Because the court finds the statu-

tory interpretation of the INS not only permissible, but correct, the court must reject plaintiffs' separate computation scheme. Accordingly, and for all of the reasons discussed above, the court orders that defendant's motion for summary judgment is hereby granted, and plaintiffs' cross motion is hereby denied. Accordingly, the Clerk of the Court is directed to dismiss plaintiffs' complaint.

**IT IS SO ORDERED.**

*FEC v. Democratic Senatorial Campaign Comm.,* 454 U.S. 27, 39, 102 S.Ct. 38, 46, 70 L.Ed.2d 23 (1981).

28. It is not necessary for the court to determine that the agency construction was the only permissible construction it could have adopted.

## EXHIBIT

[black redaction bar]

U.S. Department of Justice

Justice Employee Data Service
Worksheet for Computing FLSA Under 7k
Law Enforcement Employees

SSN_____ NAME_____ ORG CODE_____ PP____ ACCT CLASS CODE_____

GRADE/STEP_____ SALARY_____

Was "7K applied to title 5"_____
Any late reporting on the next T6A?_____
Was there an FLSA payment two PP's later on the payroll register?_____

**SECTION A: Title 5 computation**

LINE NO.

A RATES: a-Basic Pay $_____ b-O/Time $_____ c-Night Diff $_____ d-Sunday Diff $_____ e-COLA/PD_____ % f-AUO_____ %

B a-Non-AUO O/Time (exclude Pay Code N hours) under title 5 (includes late reporting on T6A in PP_____)............................................................................._____hours
  b-Non-AUO O/Time-Travel under title 5.............................................................._____hours
  c-Compensatory time earned under title 5 (includes late reporting on T6A in PP_____)...._____hours
  d-'31 act O/Time hours credited (includes late reporting on T6A in PP_____)............._____hours
       Total Line B (add lines a thru d) (Total O/Time Hours........_____hours

C Title 5, non-'31 act O/Time:
  _____(line B) minus_____(line B d) = _____hours X $_____(line A b)...........$_____

D Pay Code N (used with object class 1142)
  O/Time rate $_____(line A b) minus Basic Pay $_____(line A a)= $_____ X
  _____hours (Pay Code N regular hours in excess of 8 per day)........................$_____

E Maximum earnings limitation applied..(amount reduced)..............................$_____

F Actual dollar value of non-'31 act O/Time (line C plus D minus E)..................$_____

G '31 act O/Time entitlement: $_____(line A a) X _____hours (line B d)............$_____

H Total O/Time entitlement under title 5 (add lines F and G)........................$_____

---

**SECTION B: FLSA O/Time in excess of ____ hours under Section 7k, FLSA**

LINE NO.

**HOURS OF WORK UNDER FLSA**

1 a Scheduled basic tour in pay status.............................................._____hrs
  b AUO hours reported for this PP (includes late reporting on subsequent T6A for PP____)......_____hrs
  c Meal periods during actual duty as regular tour of duty and during AUO periods when AUO credit is not given for the meal period.........................._____hrs
       TOTAL LINE 1....................................._____hrs

2 Less hours of non-work: *(Total = 0 if AUO or Reg. Sched. Overtime worked)*
  a Annual Leave......................_____     b Sick Leave................._____
  c Other leave......................_____     d Compensatory Leave........._____
  e Call back Holiday not worked....._____     f Holiday off___minus___ Holiday worked = ___
       TOTAL LINE 2 (add lines a thru f)...................._____hrs

3 ACTUAL HOURS OF BASIC TOUR & AUO WORKED.....TOTAL LINE 3 (line 1 minus line 2)............_____hrs

4 OVERTIME
  a Non-AUO O/Time____(line 3 a) minus call back O/Time not worked_____.........._____hrs
  b Non-AUO O/Time travel____(line 3 b).........................................._____hrs
  c Comp. time____(line 3 c) minus Call back Comp Time not worked____..........._____hrs
  d Meal Periods during non-AUO O/Time and compensatory time worked.............._____hrs
  e '31 act O/Time____(line 3 d) minus____'31 act hours not worked..............._____hrs
       TOTAL LINE 4......................_____hrs

5 Other hours creditable only under FLSA
  a "Suffered" or Permitted" duty................................................._____hrs
  b Travel hours of work........................................................._____hrs
       TOTAL LINE 5 (add lines a and b).................._____hrs

6 Total hours in addition to basic tour and AUO (add lines 4 and 5).......TOTAL LINE 6....._____hrs
7 TOTAL TOUR OF DUTY (ALL HOURS ACTUALLY WORKED) (add lines 3 and 6)..................._____hrs
8 OVERTIME HOURS IN EXCESS OF ___ HRS:_____(line 7) Minus *_____

IF LINE 8 IS LESS THAN ____ HOURS NO FLSA OVERTIME ENTITLEMENT

490

## EXHIBIT—Continued

Page 2 (7h)

SSN_____ NAME_____ PP_____

FLSA OVERTIME ENTITLEMENT COMPUTATION

9 Pay computation for Basic Tour and for AUO duty:
  a Basic Pay:_____hrs (line 1 a) X $_____(line A a)...........$_____
  b AUO: $_____(line 9 a) X _____ % (line A f)................$_____
     (NTE GS-10/1)
CALCULATION OF STRAIGHT RATE:                    TOTAL LINE 9.................................$_____
10 $_____(line 9)÷ _____(line 1) = STRAIGHT RATE...........TOTAL LINE 10.......$_____

ADJUSTMENTS TO STRAIGHT RATE TO CALCULATE REGULAR RATES:
11 Less hours of non-work:_____(line 2) X $_____(line 10)..............................$=_____

12 Plus premium pay:
  a Scheduled O/Time Hrs_____(line 6) X $_____(line 10)........................$_____
  b Night Diff hours_____ less N/D for Lv & Hol hrs_____(include late reporting) = hrs worked
     X $_____(line A c)...........................................$_____
  c Sunday hours_____(include late reporting) X $_____(line A d)....................$_____
  d Haz diff_____reported, less Haz not wkd._____=_____hrs worked X $_____(line A a) X____%.....$_____
  e COLA/PD paid for Basic Hours scheduled:_____(line 1 a) minus_____(line 2)
     =_____hrs worked X $_____(line A a) X_____% (line A e)........................$_____
                                         TOTAL LINE 12......................$_____
13 TOTAL REMUNERATION (TOTAL OF LINES 9 LESS 11 PLUS 12)...............TOTAL LINE 13......................$_____
CALCULATION OF REGULAR RATE:
14 $_____(line 13)÷_____(line 7) = REGULAR RATE...........TOTAL LINE 14.............$_____

OVERTIME PAY ENTITLEMENT UNDER FLSA
15 $_____ Straight Rate (line 10) X _____(line 6) hours in addition to basic tour and AUO....TOTAL LINE 15.$_____
16 $_____ Reg Rate (line 14) X 50% = $_____ X_____hours (line 8).........................TOTAL LINE 16.$_____
17 OVERTIME ENTITLEMENT UNDER FLSA (ADD LINES 15 & 16).........................................TOTAL LINE 17 $_____
18 OVERTIME ENTITLEMENT UNDER TITLE 5 (AMOUNT ON LINE 8)....................................TOTAL LINE 18 $=_____
19 ADDITIONAL OVERTIME DUE EMPLOYEE (LINE 17 LESS LINE 18) If line 18 is greater
   than 17 enter NONE....................................................................TOTAL LINE 19 $_____

COMPUTED BY_____

AUDITED BY_____