**Michael ZUMERLING, et al.,**
**Appellants,**

v.

**Donald J. DEVINE, et al., Appellees.**

**Appeal No. 85-541.**

United States Court of Appeals,
Federal Circuit.

July 31, 1985.

Thomas A. Woodley, Mulholland & Hickey, Washington, D.C., argued for appellants. With him on brief was Erick J. Genser.

Robert A. Reutershan, Asst. Director, Commercial Litigation Branch, Dept. of Justice, Washington, D.C., argued for appellees. With him on brief were Richard K. Willard, Acting Asst. Atty. Gen. and David M. Cohen, Director.

John Salter, Office of Gen. Counsel, Office of Personnel Management, Washington, D.C., of counsel.

Before MARKEY, Chief Judge, RICH, Circuit Judge, and NICHOLS, Senior Circuit Judge.

NICHOLS, Senior Circuit Judge.

This appeal presents for our review whether the Office of Personnel Management (OPM) has properly applied section 7(k) of the Fair Labor Standards Act (FLSA or Act), 29 U.S.C. § 207(k), as amended in 1974, in formulating its equation for the calculation of overtime payments for federal firefighters and law enforcement officers. Appellants (firefighters), over 4,500 current and former employees of the United States employed in fire protection and law enforcement activities, individually brought suit in the District Court for the Western District of Pennsylvania asserting various claims concerning their minimum wage and overtime compensation. On cross-motions for summary judgment, the court, Mansmann, J., premised its jurisdiction on 28 U.S.C. § 1346(a)(2) (the "Little Tucker Act") and held, in relevant part, that no violation of the overtime provision of the FLSA exists, but some claimants recovered under the minimum wage provisions of that Act. On the firefighters' appeal of the trial court's judgment on the overtime claims, we take jurisdiction under 28 U.S.C. § 1295, and affirm the district court's judgment.

## I

The facts of this case are set forth in detail in the district court opinion, *Zumerling v. Marsh*, 591 F.Supp. 537 (W.D.Pa. 1984). While a complete repetition of these facts is not necessary to the resolution of the questions of law considered here, we recount the relevant statutory provisions and the overtime computation schemes set by OPM and requested by the firefighters.

### A. *Background*

In contrast to the typical general schedule (GS) employee who is scheduled for a 40–hour workweek, the appellants typically work six 24–hour shifts, or 144 hours, in every 14–day work period. Also, unlike a typical employee who is on duty for all working hours, the firefighters are only on duty for 8 hours of each 24–hour shift; the remaining 16 hours are standby time where the firefighters may do as they please within the confines of the duty area. Congress has recognized that appellants' work schedules are different from those of typical government employees, and in Title V set forth the computation for a firefighters' pay in recognition of this difference. In accordance with 5 U.S.C. § 5545, on a weekly basis a firefighter receives basic pay, computed by dividing the yearly GS pay by 2,080 hours, and "premium pay" of up to 25 percent of the basic GS pay. This pay structure, doubled to compensate firefighters for their full 144–hour biweekly work period, is premised independently upon Title V and existed prior to the FLSA amendments mandating overtime compensation rates for federal firefighters.

In 1974 the FLSA was amended to include within its scope, among others, federal firefighters. Under section 7(a) of the FLSA, "[e]xcept as otherwise provided in this section," employees receive overtime compensation for a workweek over 40 hours at a rate of one and one-half times

their "regular rate." 29 U.S.C. § 207(a). (According to § 7(e) "regular rate" includes all remuneration except, *inter alia,* sums paid as gifts or rewards or payments made for occasional periods when no work is performed, *i.e.,* sick leave, vacation time, and similar periods. 29 U.S.C. § 207(e).) Section 7(k), however, provides an exception to § 7(a) for those engaged in fire protection and law enforcement activities. The subsection provides in pertinent part:

> No public agency shall be deemed to have violated subsection (a) of this section with respect to the employment of any employee in fire protection [or law enforcement] activities * * * if—
>
> *   *   *   *   *   *
>
> (2) in the case of such an employee to whom a work period of at least 7 but less than 28 days applies, in his work period the employee receives for tours of duty which in the aggregate exceed [the] number of hours which bears the same ratio to the number of consecutive days in his work period as 216 hours * * * to 28 days,
>
> compensation at a rate not less than one and one-half times the regular rate at which he is employed.

Thus under § 7(k) a firefighter's "overtime" period is calculated based on tours of duty in excess of a statutorily defined maximum work period, rather than hours worked over a 40–hour workweek.

### B. *Computation of Overtime*

Squarely at issue in this case is the method of determining the "regular rate" from which overtime wages are calculated. The parties agree as to the manner in which OPM calculates the regular rate, however, appellants assert this computation violates the statute and seek alternative methods more favorable to themselves. Both parties have been helpful by providing illustrations of the various computations. According to the illustrations in the affidavit of Dwight Brown, a Personnel Management Specialist at OPM, which are consistent with appellants' illustrations and which we will use throughout, the various computations are as follows:

### 1. *OPM's method*

OPM issued Federal Personnel Manual (FPM) Letter No. 551–5 in 1975 instructing federal agencies on the application of the FLSA to employees such as appellants. Title V and the FLSA are applied separately, and each employee's pay reflects the greater of the amounts necessitated by the separate laws.

OPM calculates the FLSA regular rate as follows:

$$\text{regular rate} = \frac{\text{total remuneration}}{\text{tour of duty hours}}$$

For a GS–3, step 1, firefighter in 1978, the lowest salaried classification and pay level occurring, the regular rate is:

$$\frac{\$409.60 \text{ (Basic Pay)} + \$102.40 \text{ (Premium Pay)}}{144 \text{ hours (2-week tour of duty)}} = \$3.56 \text{ reg. rate}$$

Overtime is mandated by FLSA § 7(k) for all hours over the 108 "average" prescribed in § 7(k). This amount is:

$$\tfrac{1}{2} \times \text{hourly regular rate} \times \text{number of hours}$$

The multiplier of one-half the regular rate is a reflection of the fact the firefighters already get paid independently of FLSA for each hour of their 144 working hours. Thus the one-half pay in addition to the regular pay amounts to the one and one-half rate mandated by § 7(k). A GS–3, step 1 employee who works 36 hours overtime in a 2–week period (144–108) receives:

$$\tfrac{1}{2} \times \$3.56 \text{ (reg. rate)} \times 36 \text{ (overtime hours)} = \$64.08$$

The total for the employee is $576.08.

### 2. *Appellants' Interpretation*

Appellants assert that OPM's calculation of the regular rate is faulty, as the rate should be the GS basic pay divided by a 40–hour workweek. Thus, for the GS–3 employee:

$$\frac{\$409.60 \text{ (GS pay)}}{80 \text{ (two 40-hour weeks)}} = \$5.12 \text{ regular rate}$$

Appellants continue that overtime should be at the rate of one and one-half this Title V hourly basic rate, which they contend is the FLSA "regular rate." Thus:

$1\frac{1}{2} \times \$5.12$ (reg. rate)
$\times 36$ (overtime) $= \$267.48$ (overtime)

At argument, appellants also asserted as "acceptable" a calculation in which the regular rate is the total remuneration divided by the statutory average tour of duty hours. Thus

$\frac{\$409.60 \text{ (GS pay)} + \$102.40 \text{ (premium pay)}}{108 \text{ hours (statutory nonovertime hours)}} = \$4.74$ reg. rate

Overtime would be calculated as above using the $4.74 regular rate:

$1\frac{1}{2} \times \$4.74$ (reg. rate) $\times 36$ hours $= \$255.96$

In any event, hours on leave should not be counted in determining the regular rate, according to appellants. Thus, whenever part of a tour is taken by leave, the regular rate should rise. The OPM formula does not do this, as it includes neither the leave hours nor the compensation for those hours.

## II

■ As a preliminary matter, we address the district court's jurisdiction over the claims at issue. The FLSA claims here are against the United States, and may not be brought unless the United States has waived its sovereign immunity. Such a waiver can be found in the Tucker Act, a jurisdictional statute not conferring a substantive right, *United States v. Testan*, 424 U.S. 392, 398, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976), which provides the district court with original jurisdiction, concurrent with the United States Claims Court, of

(2) Any other civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, * * * or for liquidated or unliqui-

dated damages in cases not sounding in tort.

28 U.S.C. § 1346(a)(2).
*See United States v. Mitchell*, 463 U.S. 206, 216, 103 S.Ct. 2961, 2967, 77 L.Ed.2d 580 (1983). Appellants' substantive rights are based upon the FLSA.

While it is clear that the United States has consented to be sued for the claims present here, it is similarly clear that the district court has jurisdiction only of claims not exceeding $10,000 in amount. Before the district court, the United States argued that jurisdiction was not present for most of the claims as the amounts claimed exceeded $10,000. The district court considered its jurisdiction, properly ascertaining that each claim must be considered individually, *see, e.g., Commonwealth of Pennsylvania v. National Association of Flood Insurers*, 520 F.2d 11, 25 (3d Cir. 1975); and that the amount claimed must not be in excess of $10,000 including attorney's fees. *See, e.g., Graham v. Henegar*, 640 F.2d 732 (5th Cir.1981). The court also properly held that the district court is provided jurisdiction of claims which arguably may exceed $10,000 if a waiver to recovery in excess of $10,000 is made. *See, e.g., Goble v. Marsh*, 684 F.2d 12, 15 (D.C.Cir. 1982). As six claimants did waive recovery excessive to district court jurisdiction, the court clearly had jurisdiction to decide the merits of these claims.

The district court understandably had a more difficult time with the remaining claims, which did not seek any specific amount and which premised jurisdiction upon other bases, such as the FLSA itself, as well as the Tucker Act. The court accepted jurisdiction over the remaining claims, premising its acceptance of jurisdiction upon the firefighters' assertion that damages could be decided on an amicable basis and that virtually all the claims do not exceed $10,000.

■ The amount in controversy for jurisdictional purposes must be ascertained by the requests in the pleadings without consideration of success on the merits, 2A Moore's Federal Practice, ¶ 8.09[1] (2d. ed.

1985), and the government argues that if the court accepts the firefighters' calculations, the recovery will be substantially over $10,000. We note as well that some courts have imputed a waiver of recovery to a complainant who premises district court jurisdiction on the Tucker Act, *see Wolak v. United States*, 366 F.Supp. 1106 (D.Conn.1973), but no waiver may be imputed here as appellants argue that the FLSA confers jurisdiction upon the district court without regard to the amount in controversy.

While the firefighters' contentions are seriously placed in doubt by the government's arguments, the amount in controversy is an uncertain fact and, in the absence of clear error, we will not upset the district court's acceptance of jurisdiction. The district court and this court in all events have jurisdiction over the claims of six appellants, and therefore this court must reach the questions of law that are common to all the claims. As we hold the six claims lack merit, it would be highly academic to reconsider the uncertain amount in controversy in the other cases, possibly necessitating a transfer of the claims to the Claims Court and further appeal to this court where this decision on the six cases would be precedent. *See Boeing Co. v. United States*, 480 F.2d 854, 856 (Ct.Cl.1973); *Monett v. United States*, 419 F.2d 434, 436, n. 4 (Ct.Cl.1969), *cert. denied*, 400 U.S. 846, 91 S.Ct. 91, 27 L.Ed.2d 82 (1970).

Appellants argue that the FLSA confers jurisdiction upon the district court independent of the Tucker Act, and is therefore unlimited as to amount. That issue was presented to this court only in appellants' reply brief, was without comment from the government, and was not the basis of the district court's jurisdictional holding. As it is jurisdictional, however, we think it requires some reply. *Testan, supra*, draws a distinction between a law conferring a substantive right to receive money from the United States, and a law endowing a court with jurisdiction of suits to enforce that right, and both must be present. 29 U.S.C. § 216(b) authorizes Fair Labor Standards

Act suits "in any Federal or state court of competent jurisdiction," but the words "of competent jurisdiction" tell us that the words do not stand alone but require one to look elsewhere to find out what court, if any, has jurisdiction. The Court of Claims held, while it existed, that it was thus designated where the suit was against the Federal Government. *Beebe v. United States*, 640 F.2d 1283 (Ct.Cl.1981). It held, however, that it was not excused by § 216(b) from respecting preexisting limitations on its jurisdiction, that might not apply to district courts. *Qualls v. United States*, 678 F.2d 190 (Ct.Cl.1982). It follows that the district court must likewise look to the limitations on its jurisdiction in 28 U.S.C. § 1346.

### III

Turning to the merits, we hold that OPM's administration of the FLSA overtime provisions is both reasonable and consistent with the statute, the regulations promulgated by the Secretary of Labor, and the intent of Congress. The Claims Court has so held, respecting Customs Air Officers and Aircraft Pilots, law enforcement officers. *Alexander v. United States*, 1 Cl.Ct. 653 (1983). The able discussion by Senior Judge White is, we believe, entirely consistent with what follows and inconsistent with appellants' arguments, though the category of federal employees is different. There is no record of any appeal in that case.

While, in general, the Secretary of Labor has been given the responsibility to administer the FLSA, under § 4(f)

> Notwithstanding any other provision of this chapter, or any other law, the Director of the Office of Personnel Management is authorized to administer the provisions of this chapter with respect to any individual employed by the United States * * *.

The legislative history of the 1974 amendments indicates Congress' rationale for providing this departure from the general administrative scheme. *See* H.Rep. No. 93–

913, 93rd Cong., 2d Sess., *reprinted in* 1974 U.S.Code Cong. & Ad.News 2811, 2837. Congress noted that the Civil Service Commission (succeeded by OPM) opposed bringing federal employees under the coverage of the FLSA as such employees were "already covered by special pay provisions of Title 5, United States Code, and [there was concern] that enactment * * would confuse the administration of these provisions and could raise jurisdictional problems of administration." *Id.* Congress responded to these concerns by covering federal employees under the FLSA, while charging the Civil Service Commission with the administration of the Act so far as federal employees (other than an exempted group) were concerned. Congress then explicitly set forth its intent concerning administration:

"It is the intent of the Committee that the Commission will administer the provisions of the law in such a manner as to *assure consistency* with the meaning, scope, and application established by the rulings, regulations, interpretations, and opinions of the Secretary of Labor *which are applicable in other sectors of the economy.*"

*Id.* [Emphasis supplied.]

Thus OPM has been given the power to interpret the statute and to set forth the guidelines and policies of the agency. OPM has met its obligation by the promulgation of FPM Letter 551, through which the agency attempts to limit the confusion resulting from applying two different laws to the same concern. We conclude that OPM's interpretative guidelines "harmonize[s] with the statute's 'origin and purpose,'" the standard stated in *United States v. Vogel Fertilizer Co.,* 455 U.S. 16, 26, 102 S.Ct. 821, 828, 70 L.Ed.2d 792 (1982), as well as with the Secretary of Labor's regulations.

It is clear that Congress' enactment of § 7(k) reflects two concerns: that firefighters be protected from unfair work schedules and that firefighters' schedules were particularly unsuited to the "hours of work" concept generally applicable in de-

termining hours of overtime. *See, e.g.,* 120 Cong.Rec. 8760 (1974) (Remarks of Senator Williams). In recognition of the complexities involved in determining the hours truly considered as "overtime" for employees whose working periods include both on-duty and standby time, Congress struck a balance. Instead of basing overtime on hours worked above 40 hours a week, as generally calculated under § 7(a), overtime is instead based on tour of duty hours above an administratively-set average. Apparent from the statute is Congress' intent that firefighters were not always to be treated the same as other workers.

Section 7(e), however, is applicable to the overtime calculation of both the firefighters and other federal employees. This section, defining the "regular rate" from which overtime is to be calculated, does not provide a specific formula, but merely sets forth that the "regular rate" includes all remuneration subject to certain limited exclusions. The firefighters attack OPM's interpretation of this section on two fronts: they argue that OPM incorrectly includes within "total remuneration" the premium pay received pursuant to 5 U.S.C. § 5545, and that OPM incorrectly divides that total remuneration by the total hours for which it is received, the 144 hours served in each 2–week pay period. Analysis of OPM's rationale and the Labor Department regulations, however, indicates that the firefighters' contentions are ill-conceived.

We address first OPM's reasoning in formulating its calculation. The Court of Claims has held that FPM Letter 551–5 is a proper exercise of authority delegated by Congress to OPM and that it is proper for an agency to rely on it in implementing the FLSA provisions. *Beebe v. United States, supra. Beebe* also refers to 29 U.S.C. § 259. This exempts an employer from paying FLSA damages if it acts in reliance on a ruling or interpretation by an agency designated by Congress to administer the Act, *i.e.,* the Wages and Hours Division of the Labor Department. The Court of Claims assumed for that case only, that respecting government firefighters, OPM

may also be such an agency. In this case, appellee says in its brief it does not rely on § 259, but may do so in future proceedings if any occur. We cannot approve such a piecemeal manner of unveiling defenses.

FPM Letter 551–5 presents guidelines for the application of both the Title V and FLSA overtime provisions. The guidelines indicate first that premium pay on an annual basis for regularly scheduled standby duty does not fall under the specific statutory exclusions of § 7(e) and therefore must be included in the regular rate. The regular rate is then determined by dividing the total remuneration by the total hours worked, generally the tour of duty during the work period.

On its face, it appears reasonable that the regular rate is to indicate the typical hourly wage paid, and OPM's equation merely reflects this fact. Because of appellants' arguments, however, analysis must be of greater detail. Our conclusion, however, is the same.

OPM's determination that premium pay is included in the FLSA regular rate flows directly from the statute and is completely correct. Simply because the remuneration is labeled "premium pay" under Title V does not mean that it is excluded as premium pay under the FLSA. Section 7(e) does not provide a blanket exclusion of premium pay; rather only premium pay received for certain activities is excluded. Among such excluded pay is that received for certain hours worked in excess of normal working hours. OPM has interpreted the annual pay received for unusual working conditions to fall outside this exclusion.

Having considered the Secretary of Labor's interpretation of the § 7(e) exclusions we cannot deem OPM's interpretation incorrect. Section 7(e)(5) has been interpreted by the Secretary, in 29 C.F.R. § 778.201(6), as excluding extra premium payments treated as *overtime premiums.* The regulations then provide examples of proper exclusions. For example, § 778.202(c) illustrates the instance of an employee paid an hourly rate of $5.75 an hour and $6.25 per hour for hours worked in excess

of his normal ones. In calculating the regular rate, the employer here may exclude the premium *rate.* This, of course, is reasonable since the regular rate is to reflect the *general* hourly wage.

It is easy to see that OPM's interpretation is consistent with the regulations. The firefighters' premium pay is not received in return for any particular hours of work. Rather, it is a function of the government's recognition that firefighters don't work the typical work schedule of the federal system. The annual basis payment, therefore, is not an overtime payment, but a means of generally compensating the employees given the confines of the federal pay schedule. As such, it is part of the wage typically paid for each hour of work and must be included. Appellants' argument that it shouldn't be included because typical federal employees don't receive such inclusion in their calculation is a misplaced one. Simply because other employees do not have such pay included (we note that no citation was presented for this premise) does not warrant a departure from the statute. (We only speculate, but perhaps such payment is not generally included only because it is not generally received.)

The premium pay was originally devised for law enforcement officers, such as investigators, in recognition of the practical difficulty of controlling their hours by antecedent scheduling. It was first intended to be, and until later was, in lieu of all regular overtime, and thus the regular pay plus the premium was then the lawful pay for whatever hours the investigator might work. The first such premium pay is in Pub.L. No. 763, § 208, approved September 1, 1954, and explained in S.Rep. No. 1992, 63d Cong., 2d Sess. 3, *reprinted in* 1954 U.S. Code Cong. & Ad.News 3816, 3823.

Similarly, OPM's determination that the regular rate is to be calculated based upon the total hours worked for the remuneration is a proper one. While the statute does not speak to the hours from which the rate is to be calculated, the Secretary's regulations provide an adequate framework for comparison.

The Secretary's regulations provide that 29 C.F.R. Part 778, the regular rate provisions, are to apply to those falling under § 7(k) but are to reflect the difference between the work period and workweek concept. By § 778.109, the rate is to be calculated "by dividing [the] total remuneration (except statutory exclusions) in any workweek [or work period] by the total number of hours actually worked by [the employee] in that workweek [work period] for which that compensation was paid." This regulation thus provides for the same calculation as OPM's guidelines.

We consider further the Secretary's regulations on this point only because of appellants' complaint that the total hours used to compute an hourly rate cannot include overtime hours, even if remuneration included in calculating the rate is received for them. The illustrations provided by the regulations indicate the contrary.

For example, § 778.110(b) describes a situation where an employee works 46 hours a week for a salary of $6 an hour plus a $9.20 production bonus. The regular rate is $6.20, calculated:

$$\frac{\$276\ (\$6\ \text{for 46 hours}) + \$9.20}{46\ \text{hours (all hours for which the remuneration was received)}}$$

Section 778.111 provides the example of a pieceworker who works 50 hours and has earned $245.50 at piece rates for 46 hours of productive work plus $5 an hour for 4 hours of waiting time. The regular rate is:

$$\frac{\$245\ (\text{piece rate}) + \$20\ (\text{waiting time payment})}{50\ \text{hours (total hours worked)}} = \$5.31$$

Similarly, § 778.113 provides that for an employee paid by a weekly salary, the regular rate is computed by dividing the salary by the number of hours which the salary is intended to compensate. See also § 778.115 (employee working at two or more rates).

The Secretary's regulations clearly indicate that the regular rate is to be calculated as OPM has; the agency is to divide the total remuneration by the hours worked for receipt of that remuneration. Here there is no dispute that federal firefighters were paid their GS pay plus premium pay salary as their total pay prior to the enactment of the FLSA. This pay reflected compensation for the hours worked, 144 hours in a 2–week work period. Thus the rate should be based on 144 hours. (We note that the guidelines provide for instances where hours less than the typical ones are worked.) (Contrary to appellants' equal protection argument, the fact that the firefighters' rate is based on more hours than typically used for federal employees does not reflect discrimination. The general formula for the regular rate applies equally to all these employees. The different calculations based on this formula merely reflect the employees' different work schedules and compensations. Appellants' equal protection claim fails.)

IV

Having persevered through the regular rate guidelines, we consider OPM's overtime formula. By FPM Letter 551–5, OPM instructs that an employee is entitled to additional compensation at a rate of one-half times the "regular rate" for each hour the employee's tour of duty exceeds the maximum hours limitation of § 7(k) of the FLSA. The Letter explains that the additional compensation is one-half the rate rather than one and one-half the rate because "in computing an employee's total remuneration for the work period, the employee has already been compensated at 100 percent for all his hours in his tour of duty." By receiving an additional one-half pay, the employee receives in total one and one-half times the regular rate at which he is employed.

OPM's calculation is proper. Section 7(k) only mandates that a firefighter receive in total one and one-half times his regular rate for each overtime hour, it does not indicate that he must receive this amount in addition to the overtime compensation he already receives. Here the employees receive their regular rate pay for each of the 144 hours they work. By receiving an ad-

ditional one-hour regular rate salary for overtime hours, their total overtime compensation equals the statutorily mandated amount.

This calculation is consistent with the Secretary's regulations. We turn again to § 778.111. Here a pieceworker's regular rate is his total earnings for the workweek divided by the hours worked. "For his overtime work the pieceworker is entitled to be paid, in addition to his total weekly earnings at this regular rate for all hours worked, a sum equivalent to one-half this regular rate of pay" multiplied by the overtime hours. Similarly, an employee paid a flat sum for a day's work without regard to the number of hours worked is paid an extra half-time pay at his regular rate for overtime hours. 29 C.F.R. § 778.112. These regulations, like OPM's guidelines, reflect that one-half pay when added to straight time pay totals the one and one-half time rate mandated by law. Thus OPM's overtime provision is consistent with the regulations and is a proper interpretation of the statute. We have considered the cases cited by the firefighters and find that they do not support a contrary result.

V

By promulgating the guidelines at issue in this case, OPM has met the challenge given it by Congress. It has administered the FLSA in a most difficult situation and has done so consistent with the Secretary of Labor's regulations. The firefighters, by their claims, actually seek a windfall payment for the work they typically do, suggesting that Congress intended that for each work period they receive about $250 in extra overtime compensation based upon a $510 salary. Nothing in the statute supports this result, nor can appellants find comfort in any regulatory provision. Appellants' arguments, while perhaps initially ringing true, do not withstand scrutiny, and therefore must fail.

AFFIRMED.