Mohammed M. EL–SHEIKH,
Plaintiff–Appellant,

v.

UNITED STATES, Defendant–Appellee.

No. 98–5018.

United States Court of Appeals,
Federal Circuit.

May 12, 1999.

Nils G. Peterson, Law Offices of Nils G. Peterson, of Arlington, Virginia, argued for plaintiff-appellant.

Armando O. Bonilla, Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, argued for defendant-appellee. On the brief were David M. Cohen, Director, Kathryn A. Bleecker, Assistant Director, and Hillary A. Stern, Attorney.

Before PLAGER, Circuit Judge, FRIEDMAN, Senior Circuit Judge, and RADER, Circuit Judge.

Opinion for the court filed by Senior Circuit Judge FRIEDMAN, in which Judge RADER joins. Dissenting opinion filed by Judge PLAGER.

FRIEDMAN, Senior Circuit Judge:

The sole question in this appeal is whether the Court of Federal Claims correctly dismissed, for want of subject matter jurisdiction, the appellant El–Sheikh's claim under the Fair Labor Standards Act for overtime that he alleges he did not receive during his employment at the Bolling Air Force Base Officers' Club (Bolling Officers' Club) in Washington, D.C. We hold that the Court of Federal Claims has jurisdiction over El–Sheikh's claim, and therefore reverse and remand.

I

Non-appropriated fund instrumentalities (NAFIs) are federal government entities whose "monies do not come from congressional appropriation but rather primarily from [their] own activities, services, and product sales." *Cosme Nieves v. Deshler*, 786 F.2d 445, 446 (1st Cir.1986).

El–Sheikh's complaint alleges that he was employed for six years at the Bolling Officers' Club (a NAFI) in the food department in positions of increasing responsibility; and that between June 1993 and December 1995 he performed 2,106 hours of overtime for which he did not receive the overtime compensation to which he was entitled under the Fair Labor Standards Act.

El–Sheikh originally filed suit in the United States District Court for the District of Columbia, naming as the defendant "U.S. DEPARTMENT OF THE AIR FORCE, d/b/a Bolling Officers' Club." The government moved to dismiss the case for lack of subject matter jurisdiction or, alternatively, to transfer it to the Court of Federal Claims. The government stated that because El–Sheikh sought damages of more than $10,000, "only the United States Court of [Federal] Claims has jurisdiction." (The Court of Federal Claims is the successor to the trial division of the Court of Claims and we use the two names interchangeably).

The district court transferred the case to the Court of Federal Claims. The court's order stated that "the parties agree to transfer this case to the ... Court of [Federal] Claims" and that "jurisdiction in this matter properly lies in the ... Court of [Federal] Claims because the claim in this matter is in excess of $10,000," and "ordered that the parties request is hereby granted and that this case shall be transferred to the ... Court of [Federal] Claims."

In the Court of Federal Claims El–Sheikh filed a new complaint naming as

the defendant "THE UNITED STATES dba Bolling Officers' Club." The complaint asserted jurisdiction under the Fair Labor Standards Act, repeated the factual allegations of the earlier complaint, and sought both actual damages of $40,000 and liquidated damages in the same amount.

On the government's motion to dismiss for lack of subject matter jurisdiction, the court held that it lacked jurisdiction and dismissed. The court held that the nonappropriated funds doctrine, discussed below, barred it from entertaining the suit.

## II

■ A. The issue is whether the Court of Federal Claims had jurisdiction over El–Sheikh's suit. That court's jurisdiction is defined by the Tucker Act, which gives it the power to hear "any claim against the United States founded ... upon ... any Act of Congress." 28 U.S.C. § 1491(a)(1). Because El–Sheikh's "claim against the United States" is "founded ... upon" the Fair Labor Standards Act, an "Act of Congress," the first question is whether the United States waived its sovereign immunity to such suit. *See Saraco v. United States*, 61 F.3d 863, 864 (Fed.Cir.1995). In this case, the waiver is found in the 1974 amendments to the Fair Labor Standards Act.

In 1974, Congress extended the Act to cover most government employees. *See* H.R.Rep. No. 93–913, at 26, *reprinted in* 1974 U.S.C.C.A.N. 2811, 2837. It did so by expanding the definition of "employee"—the touchstone of coverage under the Act—to provide that "[i]n the case of an individual employed by a public agency," "the term 'employee' means"

(A) any individual employed by the Government of the United States—

(i) as a civilian in the military departments (as defined in section 102 of title 5),

(ii) in any executive agency (as defined in section 105 of such title),

(iii) in any unit of the legislative or judicial branch of the Government which has positions in the competitive service,

(iv) in a nonappropriated fund instrumentality under the jurisdiction of the Armed Forces, or

(v) in the Library of Congress[.]

29 U.S.C. § 203(e)(2).

A significant benefit of the extension of the Act to government employees was to give them the right to sue for violations of the Act. Under 29 U.S.C. § 216(b)

Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages.... An action to recover the liability prescribed in either of the preceding sentences may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated.

Reading sections 203(e)(2) and 216(b) together, they permit El–Sheikh, as an "individual employed by the Government of the United States ... in a nonappropriated fund instrumentality" to maintain in any "court of competent jurisdiction" "[a]n action to recover" damages "against [his] employer." For purposes of the Fair Labor Standards Act, El–Sheikh's employer is "the government of the United States." *See Cosme Nieves*, 786 F.2d at 448; *see also United States v. Hopkins*, 427 U.S. 123, 128, 96 S.Ct. 2508, 49 L.Ed.2d 361 (1976) ("The House and Senate Reports on Pub.L. 91–350 explicitly recognized that

employees of nonappropriated-fund activities, ·when performing their official duties, are employees of the United States."). Because the Act thus authorizes El–Sheikh to sue his "employer," the United States, the Act waives the United States' sovereign immunity from such suits. *See Saraco,* 61 F.3d at 865–66 (stating, in a suit by Customs Service employees for overtime, that under the Fair Labor Standards Act, the United States' "immunity from suit" by its employees "explicitly" "has been waived"); *Cosme Nieves,* 786 F.2d at 449 ("the FLSA waives the sovereign immunity of the United States to suit by its employees and ... NAFI employees are described in the FLSA as being employed by the United States government").

Since the statute waives sovereign immunity, the Court of Federal Claims is a "court of competent jurisdiction" under the Fair Labor Standards Act because the Tucker Act gives that court jurisdiction over claims "against the United States" that are "founded ... upon" an "Act of Congress." *See Saraco,* 61 F.3d at 865.

The statutory structure also shows that Congress waived sovereign immunity to suits by NAFI employees. In the 1974 amendments, Congress treated employees of NAFIs the same as employees of the other four government entities. The employees in all five categories are viewed as "individual[s] employed by the Government of the United States." There is no question that an employee in one of the four other categories could maintain an action in the Court of Federal Claims against the United States for alleged violation of the Fair Labor Standards Act. *See, e.g., Alexander v. United States,* 32 F.3d 1571 (Fed.Cir.1994) (suit by Immigration and Naturalization Service agents for overtime). Nothing in either the statutory language or the legislative history indicates, or even suggests, that Congress intended to limit this waiver of sovereign immunity—and the corresponding Tucker Act jurisdiction—to the four categories other than NAFIs.

■ B. The next question is whether, as the Court of Federal Claims held, the non-appropriated funds doctrine barred it from entertaining El–Sheikh's suit. Stated differently, does that doctrine create an exception to the Tucker Act jurisdiction created by the waiver of sovereign immunity in the 1974 amendments? We hold that it does not.

■ The general rule is that the Court of Federal Claims lacks jurisdiction to grant judgment against the United States on a claim against a NAFI because the United States has not assumed the financial obligations of those entities by appropriating funds to them. *See Hopkins,* 427 U.S. at 127, 96 S.Ct. 2508. The Court of Claims, which created the principle, explained that "[t]he theory has been that, since our judgments are paid only from appropriated funds, in order to be actionable here the transaction sued upon must be one which, in the contemplation of Congress, can obligate public monies. 'If Congress has indicated that public funds shall not be involved, we cannot grant the relief requested.'" *Interdent Corp. v. United States,* 203 Ct.Cl. 296, 488 F.2d 1011, 1013 (1973) (citation omitted) (no jurisdiction over a suit for patent infringement by a NAFI where, unlike the Fair Labor Standards Act, the statute making the United States liable for patent infringement, 28 U.S.C. § 1498(a), did not waive sovereign immunity for infringement by a NAFI). In other words, the court concluded that if the underlying obligation was unfunded, Congress did not intend to waive sovereign immunity from a suit based upon a breach of that obligation.

The doctrine is inapplicable, however, "where Congress has made special provisions," *Cosme Nieves,* 786 F.2d at 449 (footnote omitted), or where Congress has otherwise indicated by "special legislation," *Hopkins,* 427 U.S. at 127, 96 S.Ct.

2508. For in that situation, Congress necessarily intended to waive the bar of sovereign immunity.

The waiver of sovereign immunity that Congress provided in extending the Fair Labor Standards Act to NAFI employees, thereby permitting them to sue the United States as their employer, met this standard, and the non-appropriated funds doctrine is inapplicable here. That waiver reflects a clear Congressional intent to give all five categories of government employees the same right to sue the United States for violations of the Act. To view the non-appropriated funds doctrine as barring NAFI employees from suing the United States would be inconsistent with that intent and would deny to those employees a right that Congress intended to give all the covered government employees.

C. No discussion of this issue would be complete without reference to the 1970 amendment to the Tucker Act relating to contracts of certain NAFIs. That Act gives the Court of Federal Claims jurisdiction over "any claims against the United States founded ... upon any express or implied contract with the United States." The 1970 amendment added the following sentence:

> For the purpose of this paragraph, an express or implied contract with the Army and Air Force Exchange Service, Navy Exchanges, Marine Corps Exchanges, Coast Guard Exchanges, or Exchange Councils of the National Aeronautics and Space Administration shall be considered an express or implied contracts with the United States.

The latter provision is irrelevant in this case. It deals with contracts of five specific exchanges, which do not include the Bolling Officer's Club. Moreover, El-Sheikh's employment with the Club presumably was pursuant to an appointment, not a contract. *See Army & Air Force*

*Exch. Serv. v. Sheehan,* 456 U.S. 728, 735–38, 102 S.Ct. 2118, 72 L.Ed.2d 520 (1982).

■ Nor can it be said that this provision shows that where Congress intended to waive sovereign immunity to permit suits related to NAFI's, it did so only through the Tucker Act. The 1970 amendment to that Act was intended to overrule Court of Claims decisions that such contracts were not contracts of the United States under that Act, by expanding the court's jurisdiction to cover breaches of such contracts. *See Hopkins,* 427 U.S. at 125–26, 96 S.Ct. 2508. The change was made four years before Congress amended the Fair Labor Standards Act to extend its coverage of government employees, including NAFI employees. The 1970 Tucker Act amendment does not affect or undermine our conclusion that in the 1974 amendments to the Fair Labor Standards Act, Congress authorized suits by NAFI employees against the United States based on violations of the latter Act.

At the same time, Congress also amended the Supplemental Appropriation Act, under which Congress appropriated funds to pay judgments against the United States. *See* Pub.L. No. 91–350, 84 Stat. 449 (1970), *reprinted in* 1970 U.S.C.C.A.N. 522. The amendment, currently codified at 31 U.S.C. § 1304(c), requires that where "[a] judgment or compromise settlement against the Government [arising out of a contract by one of the specified exchanges] shall be paid ... [t]he [NAFI] making the contract shall reimburse the Government for the amount paid by the Government." Reimbursement for payment of those contract claims, however, implicates different policy considerations than payment of a judgment for a government employee based on violation of the Fair Labor Standards Act. This provision cannot be interpreted as indicating that if Congress had intended to waive sovereign immunity for the claim here involved, it similarly would

have required the NAFI to reimburse the government.

■ D. The dissent argues that the United States is not liable for the NAFI's alleged failure to pay El–Sheikh the overtime the Fair Labor Standards Act requires, and that the Court of Federal Claims therefore properly dismissed the suit. It states that "under the FLSA, a NAFI employee has the right to recover unpaid overtime compensation *from his employer*" (emphasis in original), and apparently concludes that, for purposes of liability under that Act, the "potentially responsible" employer is not the United States but the NAFI. Although the dissent concludes that the Court of Federal Claims lacked jurisdiction, the contention basically relates to the merits (as the dissent suggests), *i.e.*, that El–Sheikh has not stated a claim upon which relief may be granted.

■ That was not the ground, however, on which the Court of Federal Claims dismissed the suit, or on which the United States urged affirmance. The issue was not briefed or argued before us. Of course, we may affirm a judgment of the trial court on any ground supported by the record, whether or not that basis was given by the court or urged by a party. The decision whether to do so, however, lies within our discretion.

We do not think it would be appropriate for us to follow the course the dissent proposes in this case. Whether or not one agrees with the dissent's position on the merits, we conclude that that issue should not be adjudicated except after full adversary briefing. We decline to decide the question at this stage of the proceedings, and leave its initial resolution to the Court of Federal Claims on the remand we are ordering.

E. It may be, as the First Circuit held in *Cosme Nieves*, 786 F.2d at 450, as the Court of Federal Claims suggested in this case, and as the dissent urges, that El–Sheikh could maintain an action against the NAFI in the district court for violation of the Fair Labor Standards Act. We need not decide that issue, however, because of our conclusion that the Court of Federal Claims has jurisdiction over El–Sheikh's identical suit against the United States.

## III

This case presents the anomalous situation of the government first moving to transfer a case from the district court to the Court of Federal Claims because "the amount in controversy dictates that only" the latter court "has jurisdiction," and then, after the case has been transferred, moving to dismiss the suit in the Court of Federal Claims for lack of subject matter jurisdiction.

The same problem arose some years ago when, after the government successfully moved a district court to transfer a case to the Court of Claims, it then moved the latter court to dismiss for lack of jurisdiction. To avoid repetition of that unseemly situation, the Department of Justice adopted the practice of requiring United States attorneys to consult with the Department's main office in Washington before moving to transfer a case for lack of jurisdiction from the district court to the Court of Claims. Perhaps the practice has fallen into disuse or was overlooked in this case. In any event, hopefully the Department will take appropriate action to avoid a repetition of this unfortunate incident.

## CONCLUSION

The judgment of the Court of Federal Claims dismissing the complaint for lack of subject matter jurisdiction is reversed, and the case is remanded to that court for further proceedings consistent with this opinion.

*REVERSED AND REMANDED.*

PLAGER, Circuit Judge, dissenting.

I respectfully dissent. Though phrased in terms of subject matter jurisdiction, the dispositive issue in this case is, who is *the employer* potentially responsible for Mr. El–Sheikh's wages claim? Mr. El–Sheikh was employed by a NAFI, the Bolling Officers' Club. NAFI's are not general agencies of the United States Government; the United States Government is not liable for the wage obligations of NAFIs, except in those limited circumstances Congress has declared, of which this is not one. The Tucker Act jurisdiction of the Court of Federal Claims extends only to claims against the United States. Mr. El–Sheikh's claim is against his employer, the Bolling Officers' Club, not the United States. The Court of Federal Claims properly dismissed the suit; it should have been transferred back to the district court where it belongs.

### A.

The question in this case comes down to whether the Tucker Act—the basic jurisdiction-granting statute for the Court of Federal Claims—provides jurisdiction over a claim against a NAFI based on a violation of the FLSA. Since the Tucker Act is a grant of jurisdiction over the *United States* as defendant, the answer to that question in turn depends on whether the United States Government is liable for the obligations of the NAFI incurred in the ordinary course of the NAFI's business.

In *Standard Oil Co. v. Johnson*, 316 U.S. 481, 485, 62 S.Ct. 1168, 86 L.Ed. 1611 (1942), the Supreme Court opined that, with regard to NAFIs, absent special legislation, the "government assumes none of the financial obligations of the [NAFI]." This observation led to a series of decisions by our predecessor court, the Court of Claims, to the effect that it lacked jurisdiction over claims concerning the activi-

ties of NAFIs. *See, e.g., Kyer v. United States*, 177 Ct.Cl. 747, 369 F.2d 714 (Ct.Cl. 1966); *Pulaski Cab Co. v. United States*, 141 Ct.Cl. 160, 157 F.Supp. 955 (Ct.Cl. 1958). This conclusion is based on the theory that a suit against a NAFI is not a suit against the United States since the Government has assumed no liability for the financial obligations of the NAFI. Thus, without a "claim against the United States," there is no Tucker Act jurisdiction. *See Army & Air Force Exch. Serv. v. Sheehan*, 456 U.S. 728, 734, 102 S.Ct. 2118, 72 L.Ed.2d 520 (1982); *United States v. Hopkins*, 427 U.S. 123, 125, 96 S.Ct. 2508, 49 L.Ed.2d 361 (1976).

As the Supreme Court noted in *Hopkins*, the Court of Claims had recognized that the limited jurisdictional reach of the Tucker Act with respect to NAFIs created a potential unfairness for persons who contracted with NAFIs, since they could find themselves with no forum for a contract-based dispute with a NAFI. 427 U.S. at 125, 96 S.Ct. 2508. The Court further noted that the Court of Claims acknowledged that the remedy, if there were to be one, lay with Congress. *See id.* (quoting *Keetz v. United States*, 168 Ct.Cl. 205, 207 (1964)).

In 1970, Congress addressed this seeming inequity, and provided a federal forum for persons who contract with NAFIs in which the described NAFIs could be sued. *See* Act of July 23, 1970, Pub.L. No. 91–350, 84 Stat. 449. The Tucker Act was amended to provide jurisdiction over actions involving "an express or implied contract with the Army and Air Force Exchange Service, Navy Exchanges, Marine Corps Exchanges, Coast Guard Exchanges, or Exchange Councils of the National Aeronautic and Space Administration." 28 U.S.C. § 1491(a)(1); *see also id.* § 1346(a)(2).

The Supreme Court, as well as the predecessor to this court, have construed narrowly this 1970 amendment. In *Hopkins*,

the Supreme Court determined that if an employee of a NAFI had an "employment contract" with the NAFI then the Tucker Act gave jurisdiction over a wage claim filed by the employee, but if the employee were "appointed" to his position, the Act would not apply. *See* 427 U.S. at 126, 129–30, 96 S.Ct. 2508. "This statute deals with those who have a contractual relationship with military exchanges rather than with different classes of federal employees." *Id.* at 126, 96 S.Ct. 2508; *see also Interdent Corp. v. United States*, 203 Ct.Cl. 296, 488 F.2d 1011, 1013–14 (Ct.Cl.1973) (noting that Congress was selective both with respect to the NAFIs chosen and "as regards the types of claim to be included under § 1491"). Consistent with *Hopkins*, the Supreme Court has held that the Tucker Act failed to confer jurisdiction over a plaintiff's claim for money damages because he was an appointed rather than a contractual employee, and because no contract could be implied based on personnel regulations that were not money-mandating. *See Sheehan*, 456 U.S. at 741, 96 S.Ct. 2508.

Thus, there appears to be little doubt that the Court of Federal Claims does not have jurisdiction over this wages claim under the Tucker Act. For one, the Bolling Officers' Club is excluded from the NAFIs listed in the Tucker Act. *See* 28 U.S.C. § 1491(a)(1); *cf. McDonald's Corp. v. United States*, 926 F.2d 1126, 1132–33 (Fed.Cir.1991). For another, Mr. El–Sheikh's claim is not contractually based because his complaint alleges a statutory violation rather than a breach of contract, and because he was an appointed rather than a contract employee of the Club, *see Sheehan*, 456 U.S. at 735–38, 102 S.Ct. 2118.

The fact that NAFIs have been made generally subject to the requirements of the FLSA does not change this at all. Employees under the FLSA have a right of action against their employers for unpaid overtime compensation, and an additional equal amount as liquidated damages.

*See* 29 U.S.C. § 216(b) (1994). Section 216(b) specifically makes "[a]ny employer who violates the provisions of section 206 or section 207 or this title ... liable to the employee."

The FLSA includes in its definition of "employee" "any individual employed by the Government of the United States ... in a nonappropriated fund instrumentality under the jurisdiction of the Armed Forces." 29 U.S.C. § 203(e)(2)(A)(iv) (1994). Thus under the FLSA an employee has the right to recover unpaid overtime compensation *from his employer,* and this includes an employer who is a private company, a NAFI, or the Government itself. *See Saraco v. United States*, 61 F.3d 863, 865 (Fed.Cir.1995) (noting that § 216(b) confers the right to recover money from the United States when it is the employer and serves as a waiver of sovereign immunity (citing *Zumerling v. Devine,* 769 F.2d 745, 749 (Fed.Cir.1985))).

The FLSA further provides that an "[a]ction to recover such liability may be maintained in any court of competent jurisdiction," 29 U.S.C. § 216(b) (1994). This court has held that "the words 'of competent jurisdiction' [in § 216(b) ] tell us that the words do not stand alone but require one to look elsewhere to find out what court, if any, has jurisdiction." *Zumerling,* 769 F.2d at 749; *accord, Saraco,* 61 F.3d at 865–66.

Mr. El–Sheikh's argument that the FLSA is somehow jurisdiction-granting is, under our precedents, without merit. Final judgments rendered by the Court of Federal Claims "shall be paid out of any general appropriation therefor," 28 U.S.C. § 2517(a) (1994); *see also Hopkins,* 427 U.S. at 127, 96 S.Ct. 2508; *L'Enfant Plaza Properties, Inc. v. United States,* 229 Ct. Cl. 278, 668 F.2d 1211, 1212 (Ct.Cl.1982). Thus, jurisdiction can only be exercised over cases in which appropriated funds can be obligated. *See, e.g., Interdent Corp. v.*

*United States,* 203 Ct.Cl. 296, 488 F.2d 1011, 1013 (Ct.Cl.1973); *Kyer v. United States,* 177 Ct.Cl. 747, 369 F.2d 714, 718 (Ct.Cl.1966).

There is a general appropriations statute which authorizes "[n]ecessary amounts" to pay final judgments when "payment is not otherwise provided for." 31 U.S.C. § 1304(a)(1) (1994). This presumably would be the authority for the Government to pay a judgment rendered against it as a result of a contract claim involving one of the statutorily listed NAFIs. But section 1304 contains a specific limitation with regard to judgments against the Government arising out of express or implied contracts made by the NAFIs listed in § 1491. *See id.* § 1304(c)(1) (1994). In this situation, "[t]he Exchange making the contract shall reimburse the Government for the amount paid by the Government." *See id.* § 1304(c)(2) (1994).

No similar payback provision exists for judgments against unlisted NAFIs, which tells me that Congress did not intend for appropriated funds to be used for non-exchange NAFIs such as the Bolling Officers' Club, leaving the Treasury to pay the bill. Because a judgment in his favor cannot be paid out of appropriated funds, I conclude that Mr. El–Sheikh cannot hold the Government liable for any unpaid overtime wages due. One way to describe this would be to say that Mr. El–Sheikh has failed to state a claim upon which the Court of Federal Claims could grant relief, but it has become customary to describe these matters as a lack of jurisdiction.

The majority suggests that the Court of Federal Claims must take jurisdiction over Mr. El–Sheikh's claim, and sort out the question of who is the proper defendant as a merits question. Under many circumstances it makes sense for a court to take jurisdiction over a cause based on well-pleaded allegations, even when there is a serious question as to whether those factual allegations are provable. Here though, there are no well-pleaded allegations on which jurisdiction can be based. I do not believe that in the FLSA Congress intended to make the United States Government liable for the wages of every employee of every NAFI; the Government's liability under the FLSA is only to persons who are otherwise Government employees. Thus, when Mr. El–Sheikh names the United States Government as the defendant in his wages claim, his factual allegations establish that he has the wrong defendant. In the Court of Federal Claims that is jurisdictional; the court properly dismissed the claim.

### B.

Although I would find that the Court of Federal Claims properly concluded that it lacked jurisdiction over Mr. El–Sheikh's claim, I disagree with Mr. El–Sheikh's argument that he is left without a forum for his complaint. This case bears a striking resemblance to a 1986 case decided by the First Circuit, *Cosme Nieves v. Deshler,* 786 F.2d 445 (1st Cir.1986). In that case, employees of an officers' mess, a NAFI but not one of the listed exchanges, brought suit for failure to have paid proper wages and overtime against the NAFI, seeking back pay and damages under the FLSA.

The original suit named the NAFI as the defendant, and was filed in the local court; the suit was removed to federal court at the instance of the defendant. Subsequently, the district court dismissed the case for lack of jurisdiction and for failure to state a claim on which relief could be granted. *See Cosme Nieves,* 786 F.2d at 447. The court reasoned that the proper defendant was the United States and that, since the claims were for more than $10,000, jurisdiction was under the Tucker Act and exclusively in the U.S. Claims Court. *See id.*

The defendant, the military base that operated the NAFI, was initially repre-

sented by the Army Judge Advocate General, and on appeal urged the First Circuit to affirm the district court's ruling. The Army also argued that the appeal properly lay in the Federal Circuit, and not in the First Circuit. The First Circuit panel, apparently somewhat familiar with the law regarding "these arcane jurisdictional issues," *Cosme Nieves*, 786 F.2d at 447, was in doubt as to whether the Army reflected the considered views of the United States, and requested the Department of Justice to file a supplemental brief.

The Attorney General's brief conceded, as the plaintiffs had argued, that the proper defendant was the NAFI, not the United States, and that the district court rather than the Claims Court had jurisdiction over the suit. *See* Supplemental Brief for the United States at 3, 11, 13–14, *Cosme Nieves v. Deshler*, 786 F.2d 445 (1st Cir. 1986) (No. 85–1095). The Attorney General went on to pronounce that, if the case were transferred to the Claims Court, the Government would take the position that that court was without jurisdiction over the cause. *See id.* at 11 n. 8.

In a thorough and insightful opinion written by Chief Judge Levin Campbell, the First Circuit analyzed for itself the relevant law, and concluded that the Attorney General was correct. *See Cosme Nieves*, 786 F.2d at 447–48, 449. NAFIs constitute "a special breed of federal instrumentality, which cannot be fully analogized to the typical federal agency supported by appropriated funds." *Id.* at 448. Congress has indicated its intention that no appropriated funds be used to support NAFI activities, and thus their "nonappropriated" funds constitute a separate fund, subject to claims directly against them, and distinct from claims against the United States and the public fisc. That Congress, in the FLSA, has waived the sovereign immunity of federal agencies, including affected NAFIs, making them subject to suit by their employees, does

not alter that fact. *See id.* at 450; *Saraco*, 61 F.3d at 865; *Zumerling*, 769 F.2d at 749.

Once again, as in the First Circuit's case, the Government here on appeal abandoned its earlier position. During oral argument, the Government conceded that it erred in arguing for removal to the Court of Federal Claims and admitted that the transfer had been improvidently granted. The Government-created problem is the same; the result should be the same. I would hold, as did the First Circuit, that it was error for the district court to dismiss on the supposed ground that Mr. El–Sheikh was obliged to bring this action in the Court of Federal Claims (formerly the Claims Court) against the United States.

An appellate court must always satisfy itself "not only of its own jurisdiction, but also that of the lower courts in a cause under review." *Mitchell v. Maurer*, 293 U.S. 237, 244, 55 S.Ct. 162, 79 L.Ed. 338 (1934). Because I find that the Court of Federal Claims could not have exercised jurisdiction over this case, and because lack of subject matter jurisdiction cannot be waived by the parties, *see Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982), I conclude that the transfer from the district court was improper. *See* 28 U.S.C. § 1631 (1994) (allowing transfer "in the interest of justice" from a court lacking jurisdiction to one in which the "action or appeal could have been brought at the time it was filed or noticed"). It would appear that the district court in which Mr. El–Sheikh filed his claim has jurisdiction over his case under 28 U.S.C. § 1331 (1994), as a civil action arising under a law of the United States, and since there is no jurisdiction under the Tucker Act, it does not stand as a bar to the exercise of jurisdiction by that court.

In my view, the judgment of the Court of Federal Claims dismissing the case

should be affirmed, and the case should be remanded to the Court of Federal Claims with instructions to retransfer the case back to the U.S. District Court for the District of Columbia so Mr. El–Sheikh's claim may be heard on the merits.